## Eisenhower v. Shank.

*Judgment—Attorney's commissions—Execution.*

A prior execution creditor cannot object to an attorney's commissions on a confessed judgment held by a senior execution creditor where it appears that the attorney for the senior creditor performed substantial duties in the protection of his client's interest, and this is so even if no execution was issued upon the senior creditor's judgment.

Argued March 13, 1906. Appeal, No. 10, March T., 1905, by J. O. Clepper, from order of C. P. Cumberland Co., Sept. T., 1901, No. 142, sustaining exceptions to distribution of proceeds of sheriff's sale. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Exceptions to distribution of proceeds of sheriff's sale.
The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*E. M. Biddle, Jr.*, for appellant.—It is respectfully submitted that the court below erred in holding, in effect, that the collection fee now generally provided for in judgment notes, cannot be recovered where the sale of the defendant's land was

had on an execution based on another judgment, even if the creditor had in good faith employed an attorney to make the collection, whose efforts contributed to that collection : Imler v. Imler, 94 Pa. 372 ; Iron Co. v. Morton, 148 Pa. 72 ; Hogan's Assigned Estate, 182 Pa. 500 ; Zentmyer's App., 3 Penny. 224 ; Lewis v. Germania Savings Bank, 96 Pa. 86 ; Bank v. Thomas, 10 Am. Bankcy. Rep. 299 ; Zug v. Searight, 150 Pa. 506.

No appearance nor paper-book for appellee.

OPINION BY MORRISON, J., April 23, 1906 :

This is an appeal by James O. Clepper, a judgment lien creditor of John C. Shank, from the decree of the court of common pleas sustaining exceptions, filed by the Mt. Holly Milling and Lumber Company, appellee, a subsequent lien creditor, to the sheriff's appropriation of the proceeds of the sale of the real estate of the said John C. Shank, on a fi. fa. issued on the judgment of another lien creditor.

The appellant had a judgment lien against the real estate of John C. Shank for $400 with 5% collection fees, etc., due and payable on April 1, 1902. This judgment was a first lien against the real estate of the defendant therein. It was entered on July 16, 1901, on a promissory note, with warrant of attorney confessing judgment, which contained the following : " And with 5% collection fees, if not paid at maturity."

The appellee's judgment upon which the defendant's real estate was sold by the sheriff was not entered till March 16, 1905, and a fi. fa. was issued thereon to No. 12, May Term, 1905, and the defendant's real estate sold thereon for the sum of $635, which the sheriff appropriated as follows :

| | |
|---|---:|
| Costs on writ and appropriation . . . . . . | $ 35.03 |
| Clepper judgment, including costs and $20.00 collection fee . . . . . . . . . . . . | 323.85 |
| School and borough taxes 1902–3–4 . . . . . | 18.42 |
| L. S. Eisenhower judgment, with costs and collection fees . . . . . . . . . . . . | 246.98 |
| Mt. Holly Milling Co. costs and acc't. judgment . | 10.72 |
| Total | $635.00 |

On May 15, 1905, the Mt. Holly Milling and Lumber Co. filed exceptions to the allowance of $18.42 taxes and $20.00 collection fee on Clepper judgment as not proper claims upon the funds. May 19, 1905, counsel for the appellant and appellee agreed upon the following facts, to be filed of record as if agreed upon in a case stated:

" The judgment entered to No. 142, September Term, 1901, for use of J. O. Clepper v. John C. Shank, was the first lien against the real estate sold. The note on which said judgment was entered contained a stipulation for a "5 per cent collection fees if not paid at maturity," and the judgment index gave notice from the time of entry of said judgment that it contained such stipulation for an attorney's fee of $20.00. No execution was ever issued on said judgment. After the issuance of the fi. fa. on the Eisenhower judgment, but prior to the sale of the real estate thereunder, J. O. Clepper employed counsel to guard his interests under his said judgment, said counsel being the attorney who entered his judgment, and whose name appeared of record as his attorney. That said Clepper was advised by counsel, after an examination of the record, that his judgment would be divested by a sale on the Eisenhower execution, and that it would be entitled to be first paid out of the proceeds after payment of costs of sale. That in pursuance of his employment Clepper's counsel attended the sheriff's sale, and, having first ascertained the probable costs from the deputy sheriff, bid the property up to a figure sufficient to pay the costs of sale and the amount due on the Clepper judgment, including the attorney's fee claimed, of $20.00. That after the sale he claimed from the sheriff the amount due on the Clepper judgment, including said attorney's fee, and costs, having notified the deputy sheriff who conducted the sale, prior thereto, of his intention to make such claim."

May 26, 1905, judgment of the court sustaining exception to allowance of fee for collection of Clepper judgment and distribution ordered in accordance therewith. From this decision of the court, J. O. Clepper appealed.

To sustain the disallowance of the attorney's commission the learned court found as a fact that, " No attempt was made to collect this judgment from the defendant by the attorney for the use plaintiff, nor even any demand for the payment

thereof." The court's second conclusion of law is : " The attorney's commissions are not payable out of the fund for distribution, taxed on judgment No. 142, September Term, 1901."

We are all of the opinion that the learned court erred in the finding of fact above quoted and in the second conclusion of law, also quoted. It is a fact, appearing of record, that the Clepper judgment was long past due and that only the sum of $100 and interest had been paid thereon. It is not alleged that the defendant in that judgment ever paid or offered to pay the balance due thereon. It is an agreed fact that after the fi. fa. issued on the Eisenhower judgment, and the real estate of Shank was about to be sold by the sheriff, Clepper employed counsel to guard his interests under his judgment; that said counsel's name appeared of record as Clepper's attorney ; that Clepper was advised by the counsel, after an examination of the record, that his judgment would be divested by a sale of the Eisenhower execution, and that it would be entitled to be first paid out of the proceeds, after the payment of the costs of sale ; that in pursuance of his employment, the attorney attended the sheriff's sale and, having first ascertained the probable costs from the deputy sheriff, bid the property up to a figure sufficient to pay the costs of sale and the amount due on the Clepper judgment, including the attorney's fee of $20.00.

In view of the fact that the defendant was permitting his real estate to be sold by the sheriff, it became necessary for Clepper to have his rights guarded by having the property sold for a sufficient sum to pay the costs of sale and his judgment, and also the taxes, if they were a lien ahead of his judgment. To accomplish this would require either the personal attention of Clepper and the responsibility of bidding up the property, or else the attention of an attorney, and it cannot be contended, successfully, that Clepper was not entitled to the services of an attorney to attend the sale and take such action as would secure his money. Upon these conceded facts we think the learned court erred in finding that no attempt was made to collect the Clepper judgment. It is true that no execution was issued on that judgment, but this inured to the benefit of the defendant and to all of the subsequent lien creditors, as it saved costs, and there was no justifiable reason for issuing an execution on that judgment. We are unable to see why the

attorney for Clepper did not use sound judgment and discretion in his efforts to protect his client's interests. While the allowance of attorney's commissions and the amount thereof, is always subject to the equitable control of the court, there is no rule of law prohibiting the allowance of reasonable commissions on a judgment, under the circumstances in this case, because no execution was issued, and because it does not appear that any person demanded payment of the defendant. Where a judgment is long past due and the defendant is being sold out by subsequent judgment creditors, and he makes no offer to pay the prior judgment, it is not the law that no collection fee can be allowed because of the want of a demand made upon the defendant for payment after his property is in the hands of the sheriff.

The learned court below cites a number of cases in support of his disallowance of the collection fee, to wit: Johnson v. Marsh, 21 W. N. C. 570; Daly v. Maitland, 88 Pa. 384; Imler v. Imler, 94 Pa. 372; Moore's Appeal, 110 Pa. 433; Lindley v. Ross, 137 Pa. 629; Steigerwald v. Brewing Co., 21 Pa. Superior Ct. 540, and National Saving Fund & Bldg. Assn. v. Waters, 141 Pa. 498. We have examined these cases with some care and, under the circumstances of the present case, we do not consider that they sustain the conclusion reached by the court below. Johnson v. Marsh is authority only that a demand for payment is a prerequisite to the entry of judgment and collection of attorney's commission, on the peculiar facts in that case. It was there found by the court below that the plaintiff agreed that he wanted the judgments simply for security, and that executions should not issue for their collection until the happening of a contingency contemplated by the parties. Upon this state of facts it is of course apparent that it would be unjust and inequitable to permit the collection of large attorney's commission, without a demand for payment. We find nothing in any of the other cases cited by the court, not in harmony with the allowance of reasonable attorney's commission in the present case.

The doctrine of Imler v. Imler, as we understand it, sustains the position of the appellant. In that case Mr. Justice PAXSON said: " Where, however, an attorney has been employed in good faith by reason of the neglect or refusal of a defendant

to pay, the fact that the money has been paid to the attorney without execution, does not relieve the defendant from his agreement to pay reasonable attorney's commissions, for the reason that the creditor's liability to the attorney has attached. The contract is one of indemnity, and if the defendant, by his neglect or refusal to pay, has subjected his creditor to the necessity of employing counsel, why should he not pay? The attorney deducts his commissions even where no execution or other legal process is issued, and if the defendant cannot be made to pay, the creditor has no indemnity, and the clause means nothing."

In Warwick Iron Co. v. Morton, 148 Pa. 72, it is held as stated in the syllabus: "A preliminary demand for payment is not necessary to entitle the plaintiff in a sci. fa. sur mortgage to recover the attorney's fee for collection provided in the mortgage, nor is it any defense to the payment of such commissions that the amount of the debt was paid to the attorney without his proceeding to execution." See also Lewis v. Germania Savings Bank, 96 Pa. 86. We might refer to many other cases, but it is unnecessary to lengthen this opinion with additional citations.

In the present case the $20.00 commission was a part of the judgment and we think the plaintiff was fully warranted in employing an attorney to protect his interests, and that he is entitled to a reasonable amount of the commission to indemnify him against the expenses to which he was necessarily subjected in securing the amount due upon his judgment. We note that $100 was voluntarily paid by the defendant on the judgment and it was accepted by the plaintiff probably before the services of the attorney were rendered in securing the balance of the judgment. But in view of the circumstances of this case, and the fact that the appellant has been compelled to come to this court in order to receive any allowance for his expenses in employing the attorney, we are not disposed to hold that the allowance of the $20.00 commission in question is inequitable.

The order of the court disallowing the attorney's commission to the plaintiff is reversed, and it is now ordered that distribution be made by allowing to Clepper, appellant, $20.00 attorney's commission, in addition to the debt, interest and costs

awarded to him by the order of the court below, and that dis· tribution to the other creditors be modified accordingly. And it is further ordered that the Mt. Holly Milling and Lumber Company, appellee, pay the costs of this appeal.