## G. C. Heberling Co., Appellant, v. Wakefield, Davis, Beckert and Trimble.

Argued April 20, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*R. M. Jamison* of *Matthews & Jamison,* and with him *Harry H. Frank,* for appellant.

*A. M. Shumaker,* and with him *C. W. Fenton,* for appellees.

OPINION BY GAWTHROP, J., July 14, 1932:

Assumpsit on a written contract. Plaintiff is a corporation engaged in the manufacture and sale of medicines, extracts, etc. J. A. Wakefield, one of the defendants, had been handling the merchandise of plaintiff and had become indebted to it in the sum of $2,532.38. On January 2, 1930, Wakefield and plaintiff entered into the contract sued upon. In the words of the court below, "In this contract the plaintiff agreed to furnish the defendant, Wakefield, with medicines, extracts and other articles manufactured or sold by it, on orders from Wakefield from the date of the contract until March 1, 1932. The defendant, Wakefield, agreed to pay for the goods, either when the order was placed or within ten days from the date of the invoice of each shipment, and if not so paid, to keep a full and correct record of all goods purchased and the record of such goods as may be disposed of by him and to make written reports thereof when requested, and to pay in weekly installments on said account, such amounts as may be satisfactory to the plaintiff. The defendant, Wakefield, further agrees that there is now due to the plaintiff from him for goods and other articles sold and delivered to him the sum of $2,532.38, which he agreed to pay during the term of the agreement, and the plaintiff agreed that payment of this sum shall be so extended. On the back of this agreement John C. Davis, Louis Beckert and R. E. Trimble executed the following agreement:

'In consideration of the sum of $1 to us severally in hand paid by the G. C. Heberling Company, the receipt of which is hereby acknowledged, and the execution of the within agreement by said company, and the sale and delivery by it to the party of the second part, of its medicines, extracts and other articles, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and jointly, severally and unconditionally promise and guarantee the full and complete payment for said medicines, extracts and other articles, at the time and place, and in the manner as in said agreement provided.'

After the excution of the contract, plaintiff furnished medicines, extracts and other such articles to the defendant, Wakefield, to the total amount of $588.78. The contract was terminated on March 18, 1931. From the execution of the contract until the termination thereof, the defendant, Wakefield, paid to the plaintiff, the sum of $575.22.''

Plaintiff sued Wakefield and the sureties jointly to recover the sum of $2,545.94, which represented the balance due for merchandise sold and delivered to Wakefield after the date of the contract, and the balance due on the old account. The sureties on the contract filed an affidavit of defense admitting their liability for $13.56, the balance due plaintiff on the new account, but raised questions of law as to their liability for the other part of the claim. The court below decided the questions of law raised in the affidavit of defense in favor of the sureties and directed a judgment be entered against them for the sum of $13.56, the amount for which they tendered judgment. Plaintiff brought this appeal.

The principal question of law raised in the affidavit of defense was whether, under the terms of the contract sued upon, the sureties became liable only for the merchandise furnished to Wakefield after the date of

the contract, or whether they also became liable for the old indebtedness due by him to plaintiff. The following excerpt from the opinion of the court below satisfactorily answers this question:

"In the contract between plaintiff and Wakefield, the plaintiff agrees to furnish Wakefield 'medicines, extracts and other articles manufactured or sold by it.' The indebtedness of $2,532.38 agreed to be due at the time of the execution of the contract, is said to be 'for goods and other articles sold and delivered to him (Wakefield).'

The undertaking on the part of the guarantors, is based upon the consideration of $1.00 paid by the plaintiff and the 'sale and delivery by it to the party of the second part of its medicines, extracts and other articles as therein provided.' Their undertaking being the 'full and complete payment for said medicines, extracts and other articles at the time and place, and in the manner as in said agreement provided.'

We are of opinion that the undertaking on the part of the three defendants was simply to guarantee the payment on the part of Wakefield, for such merchandise as should be sold to him. It is to be presumed that the defendant, Wakefield, on account of his indebtedness on January 2, 1930, to the plaintiff company, was unable to obtain from the plaintiff, any more goods. It is also apparent that the defendants, Davis, Beckert and Trimble, were willing to assist Wakefield in procuring additional goods. It is also evident that the plaintiff company was willing to furnish additional goods under certain conditions. This contract being on a printed form in which the execution on the part of the plaintiff company by its president is printed on the paper, indicates that the contract is prepared by the plaintiff and that its agreement to furnish additional merchandise, is dependent upon two matters, the execution of the contract by Wakefield, wherein he agrees to pay for the new supply in a stipu-

lated manner, and further agrees to pay the existing indebtedness during the term of the new contract; and the agreement on the part of the guarantors to guarantee the full and complete payment for said medicines, extracts and other articles at the time and place, and in the manner in said agreement provided. The agreement of guarantorship being made for the benefit of the plaintiff, it should be most strongly construed against it. In the contract sued upon the plaintiff agrees to furnish Wakefield with medicines, extracts and other articles manufactured and sold by it. The existing indebtedness is set out to be for goods and other articles sold and delivered. It is not specifically provided in the guaranty that the guarantors will pay the present existing indebtedness. They only agree to guaranty the payment for 'said medicines, extracts and other articles at the time and place and in the manner as in said agreement provided.' The said medicines, extracts and other articles mentioned in the agreement are only such as are to be furnished in the future. A strict construction of the guaranty, therefore, would only apply to such goods as should be thereafter furnished, and would not apply to goods and other articles formerly furnished. If plaintiff had intended that such prior indebtedness should be included in the guaranty, it could easily have been inserted therein. A strict interpretation of the language used does not include it. The agreement should be construed most strictly against the parties for whose benefit it is made, and we are of opinion that the guaranty does not apply to the prior indebtedness of Wakefield.''

The only other question to which reference need be made is whether the payments made by Wakefield under the contract should be applied to the old indebtedness or to the debt owed for the goods delivered after the date of the contract. We agree with the following observation of the court below:

"At the argument we raised the question as to the application of the payments made by Wakefield, whether these payments should be applied to the older and existing indebtedness, or to the goods subsequently delivered. The statement of claim does not allege any particular application of the funds. The agreement itself provides that Wakefield shall pay for the future goods as they are ordered, or within ten days thereafter, and if not so paid, then to be paid in weekly installments satisfactory to plaintiff. The items of credit shown in the statement of claim show payments in amounts ranging from $6.50 to $33.99 in twenty-three cash payments, beginning January 3, 1930, and continuing until January 9, 1931. Since the statement of claim is silent as to the application of these payments, and since under the provisions of the contract they would appear to be in compliance with its terms upon the merchandise furnished after the execution of the contract, we are of opinion that they should be so applied."

The case was correctly decided below. Judgment affirmed.