Foulke *v.* Hatfield Fair Grounds Bazaar, Inc., Appellant.

Argued June 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Calvin D. Spitler,* for appellant.

*James R. Koller,* with him *Siegrist, Koller & Siegrist,* for appellees.

OPINION BY WRIGHT, J., September 12, 1961:

This case arises as the result of a rule, granted upon petition of a mortgagor, to show cause why an execution issued upon a judgment entered on a mortgage bond should not be satisfied of record without the payment of any or all of the sum of $3,691.41, representing an attorney's commission of five percent for collection. The court below discharged the rule, and this appeal by the mortgagor followed.

On May 26, 1959, the Hatfield Fair Grounds Bazaar, Inc., hereinafter referred to as Hatfield, purchased from Kirk Foulke and his wife, Kathryn R. Foulke, a farm premises located in Heidelberg Township, Lebanon County, together with farm equipment, a large number of pigs, and other personal property which included a garbage disposal contract with the City of Reading. The total purchase price was $100,000.00, set up for accounting purposes as $80,000.00 for real estate and $20,000.00 for personal property. The sum of $29,000.00 was paid in cash, and a purchase money mortgage was given to the Foulkes in the amount of $71,000.00, payable $35,000.00 on June 1, 1960, and $36,000.00 on June 1, 1961. The mortgage bore interest at the rate of three percent per annum and provided for an attorney's commission of five percent for collection in the event of default.[1]

---

[1] "AND PROVIDED FURTHER, however and it is hereby expressly agreed, that if at any time hereafter, by reason of any default in payment, either of said principal sum, at maturity, or of said interest, or of said premiums of insurance, or in production of said receipts for taxes, within the time specified, a writ of Fieri Facias is properly issued upon the Judgment obtained upon this Obligation, or by virtue of the warrant of attorney hereto attached, or action

During April, 1960, Hatfield commenced to dump unconsumed garbage on the mortgaged premises. Shortly thereafter, the Foulkes learned that the State Department of Health was complaining about the condition of the farm and, about July 29, 1960, they received a letter from the Department pertaining to this condition. In July or August of 1960, Hatfield received an official notice from the Department of Health complaining that the unconsumed garbage was causing stream pollution. No action was taken by Hatfield to correct this situation.

Also during April, 1960, the Foulkes learned that Hatfield would default in its payment of principal and interest due on June 1, 1960. They then contacted their attorney and were in constant touch with him thereafter, consulting him either in the office or by telephone two or three times a week. On July 11, 1960, the attorney sent a letter to Hatfield demanding that payment of the amount due June 1, 1960, be made no later than July 19, 1960. However, Hatfield never paid or offered to pay any of the interest or principal. On August 5, 1960, a judgment in the amount of $7,-800.00 was entered against Hatfield by a third party. On August 7, 1960, the Foulkes learned that arrangements had been made to remove all of the pigs from the mortgaged premises. Accordingly, on August 8, 1960, the Foulkes directed their attorney to enter judgment on the bond accompanying the mortgage, and to issue execution. By virtue of this writ, the Sheriff levied upon the mortgaged real estate, the farm equipment, and approximately 3000 pigs. At the sheriff's sale the Foulkes purchased most of the pigs and all of the farm

---

of mortgage foreclosure may be properly commenced upon the accompanying Indenture of Mortgage, an attorney's commission for collection, viz.: five per cent., shall be payable, and shall be recovered in addition to all principal, interest and premiums of insurance then due, besides cost of suit".

158

machinery except one manure spreader. The proceeds of the sale amounted to $78,080.00. The costs on the writ were $479.00, and the debt and interest totaled $73,828.17. The Sheriff paid into court the attorney's commission of $3,691.41, and returned the balance of $81.42 to Hatfield. Following the granting of the rule to show cause, the Foulkes filed an answer. A hearing was held at which Hatfield's president (John K. Geyer) and Kirk Foulke testified. Upon discharging the rule, the lower court directed that the money paid into court by the Sheriff should be turned over to the Foulkes.

Hatfield's sole contention on this appeal is thus stated in its brief: "The lower court erred in the exercise of its discretion in failing to reduce the attorney's commission for collection to a reasonable amount". Relying primarily on *Daly v. Maitland,* 88 Pa. 384, Hatfield takes the position that the attorney's fee for collection must be limited to "the legal expense of employing counsel to handle the execution and not any other expenses which the mortgagee may have incurred either before or after the sheriff's sale". In the cited case the attorney's commission was reduced from five percent to two percent. Hatfield quotes a footnote in Ladner on Conveyancing in Pennsylvania, Third Edition (page 241) to the effect that on large mortgages the customary five percent attorney's commission is usually reduced to three, or even one percent. Also cited is the case of *Providence Association v. Wrobel,* 77 Montgomery L. R. 53, in which an attorney's commission of $1,317.01 was reduced to $700.00.

In view of the fact that the attorney's commission for collection concededly belongs to the creditor rather than to the attorney,[2] we are not in accord with the

---

[2] *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356; *Commonwealth v. Pennsylvania Loan Corp.,* 127 Pa. Superior Ct. 253, 193 A. 141.

restricted construction for which Hatfield contends. The history of the allowance of an attorney's commission in addition to the mortgage principal and interest reveals that our appellate courts have never limited the term to mean solely the actual fee to be paid the creditor's attorney. The early case of *Huling v. Drexell,* 7 Watts 126, recognized the principle that the attorney's commission covers extra incidental charges in the nature of costs and expenses made necessary because the borrower failed to meet the terms of his obligation. In *McAllister's Appeal,* 59 Pa. 204, Mr. Justice (later Chief Justice) SHARSWOOD, who later wrote the opinion in *Daly v. Maitland,* supra, 88 Pa. 384, made the following statement:

"It ought to be considered as firmly settled by the former decisions of this court, that a creditor, in taking a security from his debtor, whether mortgage, judgment-bond or note, may lawfully include a stipulation that in the event of his being compelled to resort to legal proceedings to collect his debt, he shall be entitled to recover also with it the reasonable expenses to which he may be subjected, or a reasonable sum or commission on the amount to cover such expenses".

Subsequently, in *Johnston v. Speer,* 92 Pa. 227, Mr. Justice GORDON reaffirmed this proposition in the following language: "If there is anything positively settled with reference to an agreement, in a bond, mortgage or note, for the payment of a fixed sum as attorney's commissions, it is that the sum so fixed belongs to the payee or mortgagee as a compensation for the expenses and trouble he may incur in the collection of the claim". Again, in *Lewis v. Germania Savings Bank,* 96 Pa. 86, the principle was recognized that payment of attorney's commissions will be enforced to the extent necessary to compensate the creditor for the reasonable expenses of collection. See also *Galligan v. Heath,* 260 Pa. 457, 103 A. 878, wherein a collection

fee of five percent was held to be reasonable. This principle is sound in logic. The mortgagee, having loaned a fixed sum of money, should recover both the principal and interest without diminution for expenses which he may be forced to pay.

Hatfield argues that courts of equity "have assumed the jurisdiction of relieving the borrower from unreasonable and oppressive stipulations, exacted from his necessities". It is of course true that agreements for the payment of attorney's commissions are subject to equitable control: *Jarvis v. Stoffal*, 54 Pa. Superior Ct. 362. However, the principles of equity must be applied to both parties. Thus it was noted in *Lewis v. Germania Savings Bank*, supra, 96 Pa. 86, that to justify the court in granting relief from the payment of attorney's commission the borrower should attest his sincerity and good faith by promptly paying or tendering the amount of the debt and interest. And, in *Warwick Iron Co. v. Morton*, 148 Pa. 72, 23 A. 1065, it was said that equitable relief should not be granted "except in cases where the defendant is likely to suffer an injury through no fault or neglect of his own". In the case at bar, the court below made the following statement, which we find is fully supported by the record:

"In considering whether or not this petitioner is entitled to equitable relief, we must also consider the equities from the standpoint of the creditor. Plaintiffs' testimony reveals that they have lost money as a result of this execution and that the execution was the result of the petitioner's default and neglect. They were put to extraordinary and unusual expenses in connection with the sale and in converting the assets purchased at the sale into cash. The Plaintiffs' uncontradicted testimony was to the effect that they incurred expenses in excess of five thousand dollars ($5,-000.00), not including any part of the fee which they will have to pay their attorney".

Despite Hatfield's failure to meet the payment which became due on June 1, 1960, and its disregard of the demand made by counsel on July 11, 1960, the Foulkes did not seek to enforce collection until another judgment was entered on August 5, 1960, and they learned that arrangements had been made to remove all the pigs from the premises. With the value of the mortgaged premises already jeopardized because of Hatfield's conduct in dumping unconsumed garbage thereon and contaminating the streams, the Foulkes had no alternative other than to enter judgment and issue execution. Thereafter, it became necessary to hire three watchmen to safeguard against the surreptitious removal of the pigs prior to the sheriff's sale. Following the sale, Hatfield's president requested the Foulkes to keep the pigs on the premises so that he could feed the garbage to them. This extra expense was entirely for Hatfield's benefit. Thereafter the Foulkes were required at considerable additional expense to remove accumulated garbage. We agree with the court below that Hatfield's request for equitable relief is entitled to little consideration under the circumstances.

In *Jones v. McDowell*, 41 Pa. Superior Ct. 42, it was held that the action of the court of common pleas in refusing to strike off the attorney's commission in the assessment of damages in a mortgage foreclosure proceeding will not be set aside unless it be so plainly erroneous as to amount to an abuse of discretion. In his opinion in that case, President Judge RICE said: "His application was an appeal to the equitable jurisdiction of the court, whose duty it was to weigh the testimony, determine the facts, and exercise a sound discretion in the premises. The presumption on appeal is always in favor of the decision of the common pleas upon such question, and its refusal to strike off the attorney's commission will not be set aside unless this

be so plainly erroneous as to amount to an abuse of discretion". See also *Scott v. Carl,* 24 Pa. Superior Ct. 460; *Jarvis v. Stoffal,* supra, 54 Pa. Superior Ct. 362. We find no abuse of discretion in the instant case.

Order affirmed.

WOODSIDE, J., concurs in the result.