See also, D.C., 251 F.Supp. 26.

**CONSUMERS TIME CREDIT, INC.**
a corporation

v.

**REMARK CORP., a corporation, Lewis Bokser, individually, and Lewis Bokser, individually, and t/a Durabilt Paving Co., Maurice Kramer, Merit Metalcraft Corporation, a corporation, Liberal Sales Credit Co., a corporation, Sales Finco, Inc., a corporation, Reskob, Inc., a corporation, Lewis Bokser, Inc., a corporation and Sara L. Bokser.**

**Civ. A. No. 34331.**

United States District Court
E. D. Pennsylvania.

Sept. 6, 1966.

Blank, Rudenko, Klaus & Rome, Leonard Dubin, Henry J. Morgan, Abrahams & Lowenstein, Bernard Axelman, Philadelphia, Pa., for plaintiff.

Laurence H. Eldredge, Philadelphia, Pa., for defendants.

Schnader, Harrison, Segal & Lewis, Vincent P. Haley, Philadelphia, Pa., for Industrial Valley Bank & Trust Co., a garnishee.

## OPINION

KRAFT, District Judge.

The factual background of this action upon an accounts receivable financing agreement, commenced by a writ of fraudulent debtor's attachment, is rather exhaustively set forth in prior opinions herein.[1]

On March 4, 1966, we filed our brief Findings of Fact, Conclusions of Law and Order, pursuant to an express waiver by the parties and their counsel of a jury trial and of any extensive findings of fact and conclusions of law, as well as of the provisions of F.R.Civ.P. 52. Post-trial motions have been filed, briefed and argued by both sides.

The defendants now seek the following modifications or supplements:

(1) Amendment of certain of the Court's Findings of Fact, Conclusions of Law and Order.

(2) The entry of judgment for, notwithstanding the verdict against, Lewis Bokser.

(3) To set aside service or levy of plaintiff's attachment execution.

(4) Dissolution of the fraudulent debtor's attachment as to the remaining defendants, Merit Metalcraft Corporation, Liberal Sales Credit Co., a corporation, Sales Finco, a corporation and Reskob, Inc.

The plaintiff, too, seeks to have the Court *amend* and *eliminate* certain of its Findings of Fact, Conclusions of Law and portions of its Order.

We have again carefully reviewed the evidence, which, in many instances, posed questions of credibility. In our view, after full consideration, except for a minor revision of our Finding of Fact No. 6 and the amendment of Conclusions of Law Nos. 5 and 6 and paragraphs 1 and 4 of our Order, the evidence and the law fully support our earlier decision.

## FINDING OF FACT NO. 6

In Finding of Fact No. 6, we found that Lewis Bokser permitted Consumers to charge and deduct fire insurance premiums from loans made to Remark "without objection or dissent."

---

1. Reported and unreported as follows: D.C., 227 F.Supp. 263; unreported opinion dated May 25, 1965 granting leave to file an amended complaint; D.C., 248 F.Supp. 158 (Judge Joseph S. Lord, III).

Some evidence does appear in the record from which it could be found that Lewis Bokser did make some *minor* protest to Consumers regarding the insurance charges. Upon review we are disposed to amend the last line of our Finding of Fact No. 6 more accurately to reflect this fact. Accordingly, after the word "without" and before the word "objection" we insert the word "serious", so that the last line of No. 6, as amended, shall read as follows: "without serious objection or dissent."

## CONCLUSION OF LAW NO. 5

We held in Conclusion of Law No. 5 that Consumers had failed to prove its claim for counsel fees. The plaintiff takes sharp issue with this conclusion and asserts that by reason of the printed clause, contained in the "guaranty agreement" (Ex. P–2), providing for counsel fees of 15%, it is, ipso facto, entitled to that amount.

 It is generally held to be the settled law of Pennsylvania " * * * that a creditor in taking a security from his debtor * * * may lawfully include a stipulation that in the event of his being compelled to resort to legal proceedings to collect his debt, he shall be entitled to recover also with it the *reasonable expenses* to which he may be subjected, or a *reasonable sum* or commission on the amount to cover such expenses." McAllister's Appeal, 59 Pa. 204 (1868); Foulke v. Hatfield Fair Grounds Bazaar, Inc., 196 Pa.Super. 155, 159, 173 A.2d 703 (1961). (emphasis ours) What may be *reasonable* is not necessarily the amount stipulated in the contract. In many cases "[E]quity interposes her shield to protect the borrower", Daly v. Maitland, 88 Pa. 384, 387 (1878); and courts often allow a sum which is markedly less than the contract figure.

 The attorney's fee belongs to the creditor, not the attorney. It is in the nature of a penalty, which the court, in the exercise of its equity discretion, can refuse to award in the final judgment. Lindley v. Ross, 137 Pa. 629, 20 A. 944 (1890).

The custom of including an attorney's collection fee in a loan or security agreement has been generally sustained by Pennsylvania courts on ordinary contract principles of bargain and assent. However, in recent years, the rapacity (sometimes more gently termed "the sophistication") of many modern financial transactions has increasingly spawned "adhesion contracts", which oblige the borrower to "adhere" to onerous non-negotiable "boiler plate" provisions or be denied the loan, which the lender knows the borrower must have.

Courts have become increasingly critical and grudging in enforcing such contracts. Galligan v. Arovitch, 421 Pa. 301, 219 A.2d 463 (1966). Recently, legislative examination of the entire problem of adhesion contracts was invited by our colleague, Judge Joseph S. Lord, III, in his opinion filed on May 13, 1966. In the matter of Elkins-Dell Manufacturing Co., Inc., D.C., 253 F.Supp. 864; In the matter of Dorset Steel Equipment Co., Inc., D.C., 253 F.Supp. 864. We repeat that invitation!

While we consider some of the terms of the sundry "adhesion" contract provisions between Consumers and the defendants to be outrageous, we recognize the realities of the economic situation which confronted the parties at the time of the execution of the agreements. Remark had been unable to find any other source from which to borrow its needed capital and, while it was in a wholly unequal bargaining position, it did represent to Consumers a potentially unsound risk. Undoubtedly, Consumers required of Remark the 15% attorney's collection fee in the guaranty agreement as a precautionary measure against any future default by Remark.

 Applying equitable principles to the fact situation before us is no easy task. Both parties participated in what both knew was a most reprehensible exploitation of the least fortunate members of our society. However, even predators may contract with each other and enforce such contracts, subject to the appropriate restraints of a court of equity.

We conclude that 15%, absent any evidence of the extent or value of the services of counsel, would be unconscionable under the facts and circumstances of this case. In our view 5% is the maximum to which the plaintiff is equitably entitled as reasonable compensation for attorneys fees.

## MOTION OF MERIT, LIBERAL, FINCO AND RESKOB

Our Conclusion of Law No. 7 held, inter alia, that Merit, Liberal, Finco, and Reskob, were entitled to judgment against the plaintiff.

█ We are constrained, therefore, to grant the motion of these four corporate defendants to enlarge paragraph 4 of our Order to dissolve the fraudulent debtor's attachment against them.

## MOTION OF LEWIS BOKSER TO SET ASIDE SERVICE OF LEVY OR WRIT OF ATTACHMENT EXECUTION

█ Finally, Lewis Bokser has moved to set aside service or levy of the plaintiff's writ of attachment execution, which was served on the Industrial Valley Bank and Trust Company on March 16, 1966, following our order of March 4, 1966.

The bank was in possession of 8 life insurance policies, naming Lewis Bokser as the insured and his wife as beneficiary, when the writ was served on March 16, 1966. Our colleague, Judge Joseph S. Lord, III, in an opinion filed on November 16, 1965, 248 F.Supp. 158, held these policies to be exempt from attachment under the fraudulent debtor's attachment.

In the course of his opinion, Judge Lord also ruled that, upon the record then before him, the proceeds of a bond and mortgage, then in the possession of the bank, was owned by Lewis and Sara Bokser as tenants by the entireties. In a supplemental opinion, filed on December 29, 1965,[2] after the parties submitted a stipulation of facts and briefs, Judge Lord held that, because of the marshalling of assets doctrine, the proceeds of the bond and mortgage were to remain subject to the writ of fraudulent debtor's attachment.

Following the filing of our Opinion and Order of March 4, 1966, which dissolved the fraudulent debtor's attachment against Lewis and Sara Bokser, the garnishee bank applied the entire proceeds of the bond and mortgage to the Boksers' indebtedness to the bank.

Consumers resists Lewis Bokser's motion to set aside service of its writ of attachment execution, claiming that the bank should have first applied the cash surrender value of the 8 life insurance policies to the satisfaction of the Boksers' debt before having recourse to any of the proceeds of the bond and mortgage, so that any balance of the mortgage proceeds might be available to Consumers in application of the doctrine of marshalling of assets.

Lewis Bokser, in answer, contends that the mortgage proceeds belonged or belong to him and his wife as tenants by the entireties and are, therefore, unavailable to Consumers, which has judgment only against him. In reply, Consumers asserts that the mortgage proceeds were and are partnership property of Bokser and his wife and not entireties property, and, that Consumers is entitled so to prove.

It is true that Judge Lord held, pp. 161, 162: "Plaintiff has alleged that the property was actually owned by the Boksers, not as tenants by the entireties, but as partners. Plaintiff has adduced no facts to support this conclusory allegation, and in the absence of facts to rebut the presumption, we are obliged to treat the bond and mortgage as entireties property." However, the present motion relates to a different writ, attachment execution, and to a different time.

In these circumstances we believe the plaintiff is entitled to join issue with the garnishee in the writ of attachment

---

2. Six weeks elapsed between the filing of the initial and supplemental opinions of Judge Lord.

execution to afford the parties adequate opportunity to develop, by evidence upon trial, whatever may be the operative facts to which the applicable law must then be applied. We think that the problems posed by Lewis Bokser's motion to set aside service of the writ of attachment execution are wholly different from and should not be commingled with those relating to requested modification of our earlier findings and conclusions on the merits of the basic controversy.

## ORDER

Now, this 6th day of Sept., 1966, it is ordered that:

(1). The defendants' motions to amend our Findings of Fact, Conclusions of Law and Order are denied, except for the insertion of the word "serious" between the words "without" and "objection", as set forth in the last line of our Finding of Fact No. 6.

(2). The motion of Lewis Bokser for judgment notwithstanding the verdict is denied.

(3). The motions of Merit Metalcraft Corporation, Liberal Sales Credit Co., a corporation, Sales Finco, a corporation, and Reskob, Inc., to dissolve the fraudulent debtor's attachment against them are granted and paragraph No. 4 of our Order of March 4, 1966, is hereby amended to include these defendants within its scope.

(4). The plaintiff's motion to amend and eliminate certain of our Findings of Fact, Conclusions of Law and paragraphs of our Order is denied, except for Conclusion of Law No. 5 wherein we held: "No claim for counsel fees to plaintiff has been proven."

In lieu thereof, the following Conclusion of Law shall be, and it is, hereby substituted:

5. The plaintiff is entitled to a reasonable counsel fee of 5% of the sum of $196,099.60, to wit, $9,804.98

(5). Conclusion of Law No. 6 be, and it is, amended to state the increased amount of $205,904.58, conformably to our award of counsel fees in the sum of $9,804.98.

(6). Paragraph 1 of our Order of March 4, 1966, be, and it is, amended to increase the amount of the judgment entered in favor of the plaintiff therein against the defendants named therein from $196,099.60 to $205,904.58.

(7). Except as hereinbefore modified or amended our earlier Findings of Fact, Conclusions of Law and Order shall remain unchanged.

(8). Decision is reserved on the defendant's motion to set aside the plaintiff's service or levy of writ of attachment execution, wherein Industrial Valley Bank and Trust Co. is garnishee, pending trial of issues therein, which the parties or their counsel shall suitably frame and submit within 30 days.