## Ralston Purina Co. v. Clem E. Clarke & Son, Inc.

*Jay W. Myers,* for plaintiffs.

*Gailey C. Keller, of Smith, Eves & Keller,* for defendants.

KREISHER, P. J., August 20, 1971.—On April 3, 1968, defendants executed a note payable to plaintiffs in the amount of $34,548.79 payable at the rate of $1,000 per week. The note on its face provides for no interest, the blank for the rate of interest having been filled in by a simple "X", but does provide for a collection fee of 20 percent, the blank therefor having been filled in by the figure 20.

Judgment was entered on the note to the above term and number on July 8, 1969. On November 17, 1970, a praecipe for writ of execution was filed by plaintiffs' counsel indicating the amount due to be $27,218.16 with interest from April 1, 1970, in the

amount of $1,020.68. The praecipe made no claim for attorney's commission. On March 17, 1971, an amended praecipe was filed indicating the amount due to be $23,892.93 with interest from April 1, 1970, in the amount of $1,314 and attorney's commission of 20 percent.

Execution issued in accordance with the latter praecipe, but before levy was made, defendants filed a petition with rule to show cause why the writ of execution should not be amended in accordance with the prayer, of the petition. Answer to the petition has been made by plaintiffs, counsel have filed written briefs and the matter is now before the court for disposition.

Defendants' petition was filed in accordance with Pennsylvania Rule of Civil Procedure 3121(b)2, which provides for a stay of execution on application of any party in interest showing, "any other legal or equitable ground therefor." Exhibit "A" attached to the petition is a letter from plaintiffs' counsel acknowleging payment on said note in the amount of $32,249, leaving a balance due thereon of only $2,299.79. The note does not call for interest, but it does provide for a collection fee of 20 percent. Defendants contend, since they have been ready and willing to pay said balance, said collection fee is unreasonable and should be reduced to at least five percent which they are willing to pay.

Plaintiffs' answer to the petition, under the heading "New Matter," pleaded a guaranty of account agreement signed by the individual defendants on April 4, 1968, in the same amount as the note. Said agreement contains the following statement of intention.

"This is intended to be a continuing guaranty applying to all advances of funds and all sales made

by you to said dealer prior and subsequent to this date. . . ."

No copy of the said guarantee was attached to the answer, so defendants filed no reply thereto; however, counsel for plaintiffs did attach a copy to his brief, from which we obtained the above quote. Plaintiffs' counsel contends defendants' account for feed delivered following the execution of the guarantee agreement remains unpaid in an amount in excess of $29,000; however, only $23,892.93, the amount stated in the amended praecipe, is being tacked on to the note and the basis for the execution.

Pa. R. C. P. 312(c) provides:

"In an order staying execution the court may impose such terms and conditions or limit the stay to such reasonable time as it may deem appropriate."

In light of the above-mentioned admitted facts, it appears only two issues need be resolved by the court, namely, the balance due on the note and the legality of the 20 percent commission for collection.

Both the note and the guarantee of account agreement are contracts and they must be construed in accordance with the plain language of the instruments, without resort to contemporaneous or collateral oral agreements. The terms used therein are to be given their ordinary and usual interpretations to determine the intentions of the parties. The note containing the confession of judgment is the usual printed form with no mention it was being given for future advances. On the bottom of left-hand corner of the face of the note under the printed words "security for this note (if any)", is typewritten "Personal Guaranty" which must be considered pure surplusage, since defendants signed the note in both their corporate capacity and as an individual. The note is made payable at the rate of $1,000 per week commencing

April 19, 1968, and each week thereafter until paid. This is a clear transaction without reference to any deliveries past or future, book account or any other obligations or conditions.

The guarantee of account agreement signed the date following the execution of the said note makes no reference to the note and the only identity with the note is the amount. This agreement contains no power of attorney to confess judgment and is a clear contract to be liable for future deliveries to Clem E. Clarke and Son, Inc. This contract can be made the basis of an action against the individuals for deliveries made to the corporation, but it cannot be made the basis of a praecipe for a writ of execution before it is reduced to judgment, because plaintiffs must prove their account and defendants are entitled to their day in court and to deny the account or part of it.

In the case of Heberling Co. v. Wakefield, 106 Pa. Superior Ct. 100, it is held that under a guarantee of account contract for future deliveries, the sureties became liable only for the merchandise furnished after the date of the contract and not for the pre-existing debt.

It follows in the case at bar that the credit extended in reliance upon the guarantee contract for future deliveries cannot be added to the credit extended in reliance upon the note.

Since defendants admit a balance due on the note of $2,299.79, having discontinued their $1,000 payments on April 1, 1970, the execution is legal and valid in this amount, plus interest at the legal rate from the said date of default.

The Pennsylvania law on a stated percentage for collection is reviewed at length in the case of Consumers Time Credit, Inc. v. Remark Corp. 259 F.

Supp. 135 (1966), affirmed 377 F. 2d 553. Beginning on page 137 of the court's opinion, it is stated:

"It is generally held to be the settled law of Pennsylvania '. . . that a creditor in taking a security from his debtor . . . may lawfully include a stipulation that in the event of his being compelled to resort to legal proceedings to collect his debt, he shall be entitled to recover also with it the *reasonable expenses* to which he may be subjected, or a *reasonable sum* or commission on the amount to cover such expenses.' McAllister's Appeal, 59 Pa. 204 (1868); Foulke v. Hatfield Fair Grounds Bazaar Inc., 196 Pa. Super. 155, 159, 173 A.2d 703 (1961). (emphasis ours) What may be *reasonable* is not necessarily the amount stipulated in the contract. In many cases '(E)quity interposes her shield to protect the borrower'; Daly v. Maitland, 88 Pa. 384, 387 (1878); and courts often allow a sum which is markedly less than the contract figure.

"The attorney's fee belongs to the creditor, not the attorney. It is in the nature of a penalty, which the court, in the exercise of its equity discretion, can refuse to award in the final judgment. Lindley v. Ross, 137 Pa. 629, 20 A. 944 (1890).

"The custom of including an attorney's collection fee in a loan or security agreement has been generally sustained by Pennsylvania courts on ordinary contract principles of bargain and assent. However, in recent years, the rapacity (sometimes more gently termed 'the sophistication') of many modern financial transactions has increasingly spawned 'adhesion contracts', which oblige the borrower to 'adhere' to onerous non-negotiable 'boiler plate' provisions or be denied the loan, which the lender knows the borrower must have.

"Courts have become increasingly critical and

grudging in enforcing such contracts. Galligan v. Arovitch, 421 Pa. 301, 219 A.2d 463 (1966). Recently, legislative examination of the entire problem of adhesion contracts was invited by our colleague, Judge Joseph S. Lord, 3rd, in his opinion filed on May 13, 1966. In the matter of Elkins Dell Manufacturing Co., Inc., D.C. 253 F. Supp. 864; In the matter of Dorset Steel Equipment Co., Inc., D.C. 253 F. Supp. 864. We repeat that invitation!

"While we consider some of the terms of the sundry 'adhesion' contract provisions between Consumers and the defendants to be outrageous, we recognize the realities of the economic situation which confronted the parties at the time of the execution of the agreements. Remark had been unable to find any other source from which to borrow its needed capital and, while it was in a wholly unequal bargaining position, it did represent to Consumers a potentially unsound risk. Undoubtedly, Consumers required of Remark the 15 percent attorney's collection fee in the guaranty agreement as a precautionary measure against any future default by Remark.

"Applying equitable principles to the fact situation before us in no easy task. Both parties participated in what both knew was a most reprehensible exploitation of the least fortunate members of our society. However, even predators may contract with each other and enforce such contracts, subject to the appropriate restraints of a court of equity. We conclude that 15 percent, absent any evidence of the extent or value of the services of counsel, would be unconscionable under the facts and circumstances of this case. In our view 5 percent is the maximum to which the plaintiff is equitably entitled as reasonable compensation for attorneys fees."

In this judicial district we have usually allowed 10 percent if counsel was required to follow the execution through the sale and distribution. Since counsel for defendants allege they have been ready and willing to pay, we are inclined to follow the Federal rule above quoted. However, if it becomes necessary to make a levy, advertise and sell, then we believe our local practice of allowing 10 percent would be a reasonable percentage.

## ORDER OF COURT

And now, August 20, 1971, it is ordered and decreed that the writ of execution in the above-captioned matter be and the same is hereby amended in accordance with the foregoing opinion. Exception noted.