**UNITED STATES of America**
**v.**
**Philip HAUSHALTER.**

**PARKVALE SAVINGS ASSOCIATION,**
**a Pennsylvania corporation**
**v.**
**Philip HAUSHALTER, Appellant.**
**Nos. 71-1085, 71-1086.**

United States Court of Appeals,
Third Circuit.
Argued Jan. 21, 1972.
Decided May 4, 1972.

James A. Ashton, Pittsburgh, Pa., for appellant.

Howard V. Heck, Fulton & Heck, Pittsburgh, Pa., for appellee Parkvale Savings Assn.

Before ADAMS and JAMES ROSEN, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

The present civil suit had its genesis in a 1967 bank robbery. On October 2, 1967, the Park Federal Savings & Loan Association in Pittsburgh was robbed of approximately $36,250.[1] After arresting Haushalter for the robbery, the F.B.I. seized $9,980. contained in a Los Angeles safe deposit box which Haushalter had apparently leased.[2] Although Haushalter was convicted of the bank robbery, the money seized by the F.B.I. was never linked to the robbery and the ownership of that fund is still in dispute.

There are two contenders for the fund. James Ashton, Haushalter's lawyer in the criminal case, claims under an assignment dated September 13, 1968, which purports to transfer Haushalter's entire interest in the fund "in consideration for legal services rendered and to be rendered."[3] The other party seeking the funds is the appellee bank which, pending a trial on the merits of the claim against Haushalter for the $36,250. taken in the robbery, has custody of the $9,980. under a Pennsylvania

---

1. The appellee, Parkvale Savings Association, is the successor to Park Federal.

2. The box was leased in the name of Frank Robinson, Jr., but Haushalter appears to have been the true lessee. Inside the box there was $10,000. in cash, but $20.00 of it was counterfeit. All the money was in a wrapper from the Dania National Bank of Florida.

3. Mr. Ashton's out-of-pocket expenses amounted to $2,100. The value of the legal services he rendered in the two week period he investigated, researched and tried the case and the value of his appellate defense of Haushalter have not yet been ascertained.

writ of fraudulent attachment. The writ was served against the F.B.I. agent in possession of the fund on May 27, 1969 and enforced by a district court order entered on December 15, 1970, 320 F.Supp. 169.[4] On behalf of both Haushalter and himself, Ashton now challenges that order.

The sole issue on this appeal is whether under Pennsylvania Rule of Civil Procedure 1291 the district judge was required to give Ashton an opportunity to argue for dissolution of the attachment prior to making his *pendente lite* award of the fund to the bank. For reasons stated below, we hold that Pa.R.C.P. 1291 does envision a hearing where a timely dissolution motion has been made.

The procedure governing fraudulent debtor's attachment is codified in the Pennsylvania Rules of Civil Procedure 1285–1292. To commence attachment proceedings under Pa.R.C.P. 1287, a plaintiff files a praecipe for a writ, a bond, and a complaint alleging fraudulent removal, concealment or transfer within the ambit of Pa.R.C.P. 1286. The plaintiff thereby is given the right to attach property on the basis of unsubstantiated allegations. Counterpoised against Pa.R.C.P. 1287 is Pa.R.C.P. 1291, which protects an innocent party from an over-reaching creditor by permitting the defendant to dissolve an improper and "vexatious" attachment.[5]

In the instant case, the bank filed a complaint under Pa.R.C.P. 1286 alleging that Haushalter had transferred his interest in the fund to Ashton with fraudulent intent. If true, this allegation was sufficient basis for the issuance of a writ. On the other hand, if Haushalter can establish that his assignment to Ashton was a valid one for good consideration, then the writ must be dissolved in accordance with Pa.R.C.P. 1291. Ashton and Haushalter in essence petitioned under Pa.R.C.P. 1291 for dissolution,[6] but the judge denied them

---

4. In order to crystallize the issues, the body of the opinion does not describe the various attempts the parties made prior to 1970 to obtain the fund. On September 17, 1968, Haushalter filed a petition in federal court to reclaim the funds (Civil Action No. 68–1100). Three days later, the appellee's surety company filed its petition seeking reclamation from the F.B.I. Both petitions were dismissed by the court on March 5, 1969, without prejudice to their renewal at the termination of the criminal trial. Ashton renewed his motion on May 14, 1969 by filing a petition for the funds with Judge Marsh, the district court judge sitting on the criminal case against Haushalter. (Crim.Action No. 67–286) At the hearing on the petition, the trial court tried to persuade the surety to agree to pay Ashton his $2,100. out-of-pocket expenses, but the surety rejected the proposal. Judge Marsh felt bound by the prior ruling of the district court in Civ.Action 68–1100 and postponed *consideration of the reclamation* petitions, although he stated that he "certainly wouldn't have made" the original ruling to dismiss the petitions.

In line with the court order of March 5, 1969, after Haushalter's conviction in May 1969, both parties were free to renew their claim in the federal civil suit, 68–1100. Rejecting this route, Park Federal decided to change forums and move into the Pennsylvania Court of Common Pleas. In the state forum it filed for a Pennsylvania writ of fraudulent *debtor's* attachment (12 P.S. rule 1285 et seq.) and commenced a civil trespass suit against Haushalter for the $36,250. The stakeholder United States of America waived immunity and had the *action* removed to the federal court. (Civil Action No. 69–755). Meanwhile Ashton renewed his reclamation motion in Civil Action No. 68–1100. After a hearing on both matters on July 8, 1969, the trial judge entered the December order dismissing Ashton's petition in 68–1100 and ordering the United States to deliver the funds to the bank subject to its bond *and pending determination of the trespass claim.*

5. Cf. Commonwealth v. Kile, 16 Pa.Dist. & Co.R.2d 47, 51 (1958).

6. There was no formal petition to dissolve the attachment, but it would be pure ritual to require a formal petition and ignore the fact that the reclamation petition before the district court obviously was asking for dissolution of the attachment.

the opportunity to present and develop the claim that there had been a valid assignment. We hold that the trial court's action was erroneous.

In his December 15, 1970 opinion, the district judge correctly stated that he had to determine whether the bank had "properly secured jurisdiction in rem against the fund by the use of the Pennsylvania Fraudulent Debtor's Attachment proceeding." [7] However, he erred when he decided that the attachment was proper in that he based his conclusion on the proposition that "the defendant does not attack the regularity or sufficiency of the attachment and garnishment procedure." Even the opinion makes it clear that this finding was inaccurate: shortly after making this statement, the district judge explicitly acknowledged that Ashton and Haushalter were trying to raise the claim that there had been a valid assignment. As explained above, if this claim were substantiated, dissolution under Pa.R.C.P. 1291 would be required, but the district judge passed over the issue and suggested that "if Ashton wishes to pursue his alleged rights in this matter he should proceed by proper action under the Pennsylvania Rules of Civil Procedure governing fraudulent debtor's attachment to assert his claim * * *."

The trial judge's postponement of the Pa.R.C.P. 1291 claim was improper. In line with the protective function of Pa.R.C.P. 1291, Haushalter and Ashton should have been given an opportunity to present and develop the assignment claim. Awarding the money to the bank *pendente lite* prior to giving them that opportunity contravened the purpose of the rule.

The two reported state cases applying Pa.R.C.P. 1286 and 1291 support our conclusion. In Wyoming National Bank of Wilkes-Barre v. Daileda (No. 2), 35 Dist. & Co.2d 283 (1964), the defendant petitioned to dissolve an attachment against him on the ground that the plaintiff who had attached his property was acting under an invalid assignment. The defendant lost on the substantive question, but he was given an opportunity to present and develop his argument in favor of dissolution. Similarly, in Commonwealth v. Kile, *supra*, the defendant moved for dissolution of an attachment on several grounds, claiming, *inter alia*, that the attached property belonged, at least in part, to an innocent third party. The judge gave the defendant his day in court and in that case determined that the attachment was improper and should be dissolved.[8] This case will be remanded to the district court to give Haushalter and Ashton an opportunity to offer proof and to argue that there was a valid assignment requiring dissolution of the attachment.[9]

---

7. The judge also stated that he had to decide whether the trespass action was an action for debt within the scope of Pa.R.C.P. 1286. He determined that it was, and no objection to that conclusion is raised on this appeal.

8. See also Consumer's Time Credit, Inc. v. Remark, 259 F.Supp. 135, 138 (E.D. Pa.1966), where the petition for dissolution of the writ of attachment was heard and granted.

9. At this point it is premature to determine who should bear the costs incurred during the attachment proceedings, but see Commonwealth v. Kile, *supra*, 16 Dist. & Co., p. 60; Pa.R.C.P. 1289(b), 12 P.S. 1289.