[No. 3415–1–III.   Division Three.   June 10, 1980.]

FANCHER CATTLE COMPANY, ET AL, *Appellants,* v. CASCADE PACKING, INC., ET AL, *Respondents.*

*Kelly Hancock,* for appellants.

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Gregory S. Petrie,* and *Sam E. Baker, Jr.,* for respondents.

ROE, J.—We restrict this opinion to one narrow issue. Does the word "purchase" in the following guaranty operate. prospectively only or retrospectively as well? Over plaintiffs' objection, the trial court granted partial summary judgment holding the guaranty operated prospectively only. We affirm. We are concerned only with the written guaranty; there was no contention that there could have been an oral agreement to pay for the debt of another.

Disregarding the salutation and signature, the body of the letter consisted solely of the following paragraph:

This will serve to assure you that in the event Cascade Packing, Inc., fails to pay you for the cattle you *purchase* for Cascade Packing, Inc., I will personally guarantee payment to you.

(Italics ours.)

As stated in *Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 142–43, 500 P.2d 88 (1972), in reference to a summary judgment or a partial summary judgment pursuant to CR 56(c):

The burden is on the movant for summary judgment to demonstrate that there is no genuine dispute as to any material fact and all reasonable inferences from the evidence must be resolved against him. . . . And, where a motion is made for summary judgment, it is the duty of the trial court to consider all evidence and all reasonable inferences therefrom in a light most favorable to the nonmovant. . . . The motion should be granted only if, from this evidence, reasonable men could reach but one conclusion. . . . Only if the pleadings, depositions, admissions, and affidavits considered by the trial court do not create a genuine issue of material fact between the plaintiff and the defendant moving for summary judgment, is the latter entitled to judgment as a matter of law.

(Citations omitted.)

The primary factor to be considered in determining the meaning of a written contract is the intention of the

parties, normally to be ascertained largely from the language employed by them. *Grand Lodge v. United States Fid. & Guar. Co.,* 2 Wn.2d 561, 569–70, 98 P.2d 971 (1940).

Where the terms of a contract taken as a whole are plain and unambiguous, the meaning of the contract is to be deduced from its language alone, and it is unnecessary for a court to resort to any aids in construction. *Finch v. King Solomon Lodge 60,* 40 Wn.2d 440, 243 P.2d 645 (1952). *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.,* 13 Wn.2d 370, 384, 125 P.2d 668 (1942). But where the language of a contract is ambiguous, it is the duty of the court to search out the intent of the parties by viewing the contract as a whole and considering all the circumstances surrounding the transaction, including the subject matter and the subsequent acts of the parties. *Burch v. Rice,* 37 Wn.2d 185, 222 P.2d 847 (1950); *Seattle v. Northern Pac. Ry.,* 12 Wn.2d 247, 121 P.2d 382 (1942).

█ It is the general rule that the determination of whether a written instrument is ambiguous is a question of law for the court. *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 411 P.2d 868 (1966). The interpretation to be given written instruments whether the procedure be civil or criminal is a matter of law for the court and not a question of fact. *In re Estate of Larson,* 71 Wn.2d 349, 428 P.2d 558 (1967). In construing contracts, words are to be given their ordinary and usual meaning. Ambiguous means "'Capable of being understood in either of two or more possible senses.'" *Ladum v. Utility Cartage, Inc., supra* at 116.

Thus, we must first address ourselves to the question of whether the guaranty is ambiguous. If we determine that the language is not ambiguous, then we may not resort to other evidence to determine the intention of the parties, but we must ascertain their intent from the instrument itself. "[T]he courts, under the guise of construing or interpreting a contract, should not make another or different contract for the parties." *Poggi v. Tool Research & Eng'r Corp.,* 75 Wn.2d 356, 364, 451 P.2d 296 (1969).

■ A contract of a guarantor without compensation will be strictly construed. The guaranty should receive a liberal, fair, and reasonable interpretation. When, according to rules of construction, the intent of the parties has been ascertained, they are bound. The guaranty should not be given an unfair and strained interpretation to restrict or diminish the guarantor's obligation. *Hansen Serv., Inc. v. Lunn,* 155 Wash. 182, 189, 283 P. 695 (1930).

In the *Hansen* case, the guaranty was for goods *sold.* The question arose as to whether goods on consignment where title was reserved to the consignor would be considered within the terms of the guaranty. A consignment is inconsistent with an absolute sale. Thus it is a contract of agency; the guaranty for goods *sold* did not apply. Sureties and guarantors are not to be held liable beyond the express terms of their engagement. *Simpson Logging Co. v. American Bonding Co.,* 76 Wash. 533, 137 P. 127 (1913).

> It is a rule of very general application that all guaranties are prospective and not retrospective in operation, unless the contrary appears by express words or by necessary implication. (Brandt on Suretyship and Guaranty, 3d ed., sec. 108;. . .

*Bank of America Nat'l Trust & Sav. Ass'n v. Kelsey,* 6 Cal. App. 2d 346, 350, 44 P.2d 617, 619 (1935).

> The agreement of guarantorship being made for the benefit of the plaintiff, it should be most strongly construed against it.

*G.C. Heberling Co. v. Wakefield,* 106 Pa. Super. Ct. 100, 105, 161 A. 439, 440 (1932).

In *Western Hardware & Metal Co. v. Nordeen,* 110 Wash. 150, 153, 188 P. 1 (1920), the guaranty, unlike the one at bench, read as follows:

> "For value received I hereby guarantee to save you from loss on account of merchandise *sold or to be sold . . .*" This agreement by its express terms covers not only the merchandise previously sold on account, but also that "to be sold." The agreement therefore covered future as well as past sales.

(Italics ours.)

In *American Security Bank v. Liberty Motor Co.*, 124 Wash. 678, 679, 214 P. 1062 (1923), a guaranty was written which provided that payment "will be paid *at maturity* of each of the said loans, . . .". (Italics ours.) The court construed the language "at maturity" to mean that it would apply only to loans which had not yet matured. Since the past indebtedness had already matured, the guaranty applied prospectively only.

Plaintiffs in this action rely heavily upon the case of *Friedman v. Virginia Metal Prods. Corp.*, 56 So. 2d 515, 33 A.L.R.2d 956 (Fla. 1952). By its terms that guaranty covered all materials *purchased*. It was interpreted by the trial court to cover materials purchased in the past and all materials to be purchased in the future. The appellant argued that the word "purchased" applied only to the materials which had been purchased at the time of the execution and delivery of the written guaranty.

"The trial judge determined that the word 'purchased' was clear, definite and unambiguous, . . . and would not permit parol testimony about the contract on the theory that it would change, alter or vary the terms of a written instrument." *Friedman v. Virginia Metal Prods. Corp.*, *supra* at 516. The appellate court overruled, holding that the word "purchased" under the circumstances there was ambiguous.

The word "ambiguous" means susceptible of more than one meaning. Hence, "parol testimony may be received, not to vary or change the terms of the contract, but to explain, clarify or elucidate the word 'purchased' . . .". *Friedman v. Virginia Metal Prods. Corp., supra* at 517. Thus, it was error for the trial court to exclude parol testimony. Conceivably, then, upon retrial the word "purchased" could be made to operate retrospectively only or retrospectively and prospectively.

But that case does not control. We are not concerned here with the word "purchased," which is the past tense. This guaranty makes no reference to cattle already sold. It merely states: "[I]n the event Cascade Packing fails to pay

412

for the cattle you purchase, I will personally guarantee payment." The word "purchase" is used in the present tense, not in the past tense. Even the phrase, "In the event," suggests a future occurrence. "Purchase" is the present tense with a definite meaning. To admit parol testimony to show that it meant "purchased" (past tense) would do violence to the rule. A synonym such as "buy" should not be convertible to mean "bought." We cannot convert present to past tense or present perfect tense. "Purchase" does not mean that which has been purchased. We hold that it is unambiguous and applies prospectively only, that is as to goods "you purchase" not "you have purchased," as well.

Significantly, in the cited cases where the guaranty was intended to apply to past transactions, it was expressly provided by the terms of the guaranty. We shall not make all guaranties subject to parol testimony to prove they are not only prospective but retrospective unless preclusive expressions are employed in the instrument itself. We believe that the law clearly implies that if an agreement which is to be strictly construed is to operate retrospectively, then such language should be employed.

Accordingly, the judgment of the trial court granting defendant partial summary judgment is affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied July 7, 1980.

Review denied by Supreme Court September 19, 1980.