[No. 12244-4-I.  Division One.  May 28, 1985.]

VICTORIA TOWER PARTNERSHIP, ET AL, *Appellants,* v. BRUCE C. LORIG, ET AL, *Respondents.*

*Perkins, Coie, Stone, Olsen & Williams* and *Charles C. Gordon,* for appellants.

*Estep & Li* and *Chi–Dooh Li,* for respondents.

WILLIAMS, J.—This case involves a dispute between three parties to a limited partnership agreement, James Heron, Bruce Lorig, and William Niemi. The association, Victoria Tower Partnership, was formed by an agreement signed on December 6, 1972, its purpose being to acquire, manage and develop the Victoria Tower Apartments in Seattle. Initially, Heron, Lorig and Property Services, Inc., a corporation jointly owned by Heron and Lorig, were designated general partners. Niemi was the sole limited partner. Heron and Lorig were each issued 95 partnership units, Property Services was issued 10 units, and Niemi was issued 100 units.

On August 29, 1973, Heron, Lorig and Niemi adopted and signed Amendment 2 to the partnership agreement which issued 300 additional partnership units to Heron and Property Services and which provided for an option to purchase Niemi's 100 partnership units. That amendment provides in part:

> James R. Heron, Bruce C. Lorig and Property Services, Inc. shall have an option to purchase . . . all one hundred of the partnership units now held by William F.

Niemi, Jr. . . . for . . . $60,000. . . . This option shall be exercisable only in writing in whole but not in part at any time prior to the final liquidation and dissolution of Victoria Tower Partnership.

On March 18, 1974, Amendment 4 was executed. It provided for Lorig's resignation as general partner and the distribution of Property Services' units to Heron and Lorig; Heron remained the sole general partner. Amendment 4 also included a provision that the agreement could be amended by consent of those owning all of the partnership units. At this point the ownership interests were as follows:

Heron—325 units

Lorig—200 units

Niemi—125 units

In September of 1980, Heron attempted to unilaterally exercise the option contained in Amendment 2 for the purchase of Niemi's 100 units by tendering $60,000 to him and offering Lorig the opportunity to join in. Lorig refused to jointly exercise the option and Niemi rejected Heron's check tendered in payment of the option price.

From May to November 1980, Niemi and Lorig objected to several things which Heron was doing on behalf of the partnership, specifically his efforts to convert the apartments into condominiums and his efforts to build an additional building on the property. On October 31, 1980, Lorig and Niemi removed Heron as general partner, froze his interest in the partnership, and elected Nautical Enterprises, Inc., as the successor general partner.

Heron then commenced this lawsuit on behalf of himself and the partnership seeking judgments declaring his exercise of the Amendment 2 option valid, and the October 31, 1980 actions by Lorig and Niemi of no legal effect. The trial court decided that Heron's exercise of the option accomplished nothing because by its terms the option required joint action by Heron and Lorig. The court also declared Lorig and Niemi's actions in supplanting Heron on October 31, 1980 void. Finally, the court awarded Victoria Tower Partnership attorney fees against Niemi and Lorig because

their actions constituted bad faith. Heron appealed and Niemi and Lorig cross–appealed.

The first issue is whether the option to purchase Niemi's units per Amendment 2 could legally be exercised by Heron alone. Heron contends that the option is ambiguous and that the evidence adduced to clarify demonstrates that the parties did not intend to create a joint exercise requirement.

The determination of whether a written instrument is ambiguous is a question of law subject to independent appellate review. *Rainier Nat'l Bank v. Clausing,* 34 Wn. App. 441, 661 P.2d 1015 (1983). Ambiguities will not be found if they can be reasonably avoided by interpreting the contract as a whole. *Green River Vly. Found., Inc. v. Foster,* 78 Wn.2d 245, 473 P.2d 844 (1970). The meaning of an unambiguous contract is to be deduced from its language alone, without resorting to other evidence. *Fancher Cattle Co. v. Cascade Packing, Inc.,* 26 Wn. App. 407, 613 P.2d 178, *review denied,* 94 Wn.2d 1012 (1980).

There is no ambiguity in the option provision. It does not provide for a situation in which one optionee unilaterally exercises the option, placing the other optionee's proportional interests in escrow, which is what Heron attempted to do. The option clearly provides that Heron, Lorig and their jointly held company, Property Services, have the option to purchase. The right is owned by the three together, not individually. The option was specifically granted to Heron, Lorig and Property Services in proportion to their existing interest in the partnership and is to be exercised "in whole but not in part"; this can only be done if the optionees exercise the option jointly. Of course, Property Services' participation is no longer required.

The second issue is whether Amendment 4 requires the approval of all partners to amend the partnership agreement. The pertinent portion of Amendment 4 reads:

> 25. *Amendment.* This Partnership Agreement may be amended by written agreement of Partners who own 100% of the limited partnership units.

The mistake in this provision is that there were no *limited* partnership units, only partnership units. As seen, all of those units were severally held by the three participants. All were required to vote on any future amendment of the partnership articles.

The last issue is whether the trial court erred in awarding attorney fees to the partnership on the grounds that Niemi and Lorig acted in bad faith. The rule is that in the absence of a contract, statute, or recognized ground of equity, no attorney fees will be awarded as part of the cost of litigation. *PUD 1 v. Kottsick*, 86 Wn.2d 388, 545 P.2d 1 (1976). Attorney fees can be awarded under the equitable exception if the losing party's conduct constitutes bad faith. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 557 P.2d 342 (1976). The trial court's finding that Lorig and Niemi acted in bad faith is not supported by substantial evidence; the award of attorney fees to the partnership is therefore reversed.

The judgment is affirmed, except for the award of attorney fees to the partnership, which is reversed.

WEBSTER, J., concurs.

SCHOLFIELD, A.C.J. (concurring in part, dissenting in part)—I concur in the result reached in the majority opinion except that portion setting aside the finding of bad faith.

I must dissent, however, from the conclusion that the trial court's finding of bad faith is not supported by substantial evidence. Bad faith is a mixed question of both fact and law. The trial court, in making this finding, referred to the conduct of Lorig and Niemi from and after February 1980, during which time, without conferring with Heron, they worked together to frustrate Heron's management efforts for the apparent purpose of removing Heron as a general partner and ultimately from any further participation in the partnership. This conduct occurred after the value of the partnership property had increased substantially.

The relation existing between copartners is one requiring the exercise of the utmost good faith. Each partner is a trustee for all, and no individual or group may take an unconscionable advantage of another.

*Danich v. Culjak,* 190 Wash. 79, 87, 66 P.2d 860 (1937).

When courts speak of liability for bad faith or the duty to use good faith, they are usually referring to the same obligation. Generally speaking in the context of these cases, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto.

*Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 173, 473 P.2d 193 (1970).

The trial court's finding of bad faith is supported by substantial evidence and should be affirmed.

Reconsideration denied September 11, 1985.