729 P.2d 954

**TUCSON ESTATES, INC., an Arizona corporation, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and Hon. John G. Hawkins, a judge thereof, Respondents.**

**and**

**HOMEOWNERS' ASSOCIATION OF TUCSON ESTATES, Homer B. Lawrence, Thomas W. Campbell, Thomas M. Ward and Alphus R. Christensen, Real Parties in Interest.**

**No. 2 CA–SA 0386.**

Court of Appeals of Arizona, Division 2, Department A.

Aug. 14, 1986.

Reconsideration Denied Sept. 23, 1986.

Review Denied Dec. 2, 1986.

Law Offices of Richard J. Michela by Richard J. Michela, and O'Dowd, Burke & Lundquist by Erik M. O'Dowd, Tucson, for petitioner.

Miller & Pitt, P.C. by John A. Baade, Tucson, for real parties in interest.

FERNANDEZ, Judge.

In this special action we are asked to determine 1) whether a notice of lis pendens may be filed under A.R.S. § 12–1191 in an action seeking declaratory relief and damages arising out of the collection of monthly user fees pursuant to recorded deed restrictions and the declaration of an implied restrictive covenant and, 2) assuming that such a notice may be filed, what property may properly be included in the notice.

The factual background is as follows. Plaintiffs/real parties in interest are residents of a mobile home community located west of the Tucson Mountains in Pima County and referred to by the parties as Tucson Estates I. Tucson Estates I is part of a larger parcel of land which was owned by the predecessor in interest of defendant/petitioner Tucson Estates, Inc. (hereafter "Tucson Estates"). Tucson Estates I was developed prior to 1980, along with a golf course, recreational facilities, streets and other common areas, the ownership of which was retained by the original developer. All lots sold in Tucson Estates I were subject to recorded deed restrictions which provided, inter alia, that individual lot own-

ers would have the right to use certain common areas designated on the recorded plat, subject to a monthly assessment, and that such areas would be maintained and cared for by the owner. The golf course is not mentioned in the deed restrictions; however, it appears to be undisputed that the monthly fees have been used in part for the maintenance of the golf course. It is also undisputed that the owners of these lots and their guests have the right to use the golf course.

In 1980 Tucson Estates acquired the common areas, the golf course and more than 500 acres of adjacent property from the original developer. Since then, Tucson Estates has developed and sold a number of mobile home lots in a portion of that adjacent area referred to by the parties as Tucson Estates II, pursuant to advertising which states that the purchasers of those lots will also have the right to use the golf course. Further, Tucson Estates has attempted to sell the common areas, the golf course and the remainder of its holdings in the area representing, according to the plaintiffs, that tremendous profits are to be made off of the monthly fees collected from the lot owners.

Plaintiffs filed this lawsuit seeking: 1) an accounting of the funds collected from the lot owners in Tucson Estates I and a declaratory judgment that Tucson Estates has a duty to account to the owners at least on a quarterly basis (count one); 2) a declaratory judgment against Tucson Estates individually and as a representative party on behalf of a class consisting of the owners of lots in Tucson Estates II and those lot owners in Tucson Estates I who want Tucson Estates II residents to be able to use the golf course for a fee "that there is an implied restrictive covenant that the golf course at Tucson Estates shall be maintained as a golf course for the exclusive use of the residents" of Tucson Estates I and enjoining Tucson Estates "from granting or purporting to grant the right to use the golf course to non-residents" of Tucson Estates I (count two), and 3) a declaratory judgment that Tucson Estates may only take a fair and reasonable return on its investment from the monthly fees collected from the lot owners in Tucson Estates I and damages equal to the amount by which the funds taken by Tucson Estates have exceeded a fair and reasonable return, together with punitive damages and treble damages pursuant to A.R.S. § 13-2314(A).

In February 1986, more than one year after the amended complaint was filed and more than two years after plaintiffs' motion for summary judgment on count one had been granted, plaintiffs recorded a notice of lis pendens pursuant to A.R.S. § 12-1191, which provides in part:

A. In an action affecting title to real property, plaintiff at the time of filing the complaint, or thereafter, and defendant at the time of filing his pleading when affirmative relief is claimed in such pleading, or thereafter, may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense. The notice shall contain the names of the parties, the object of the action or affirmative defense, the relief demanded and a description of the property affected.

B. The recorder shall file the notice and record and index it in the names of the parties to the action, and thereafter a purchaser or incumbrancer of the property affected shall be held to have constructive notice of the pendency of the action and the claims therein made.

Upon discovering the recordation of the notice of lis pendens, counsel for Tucson Estates made a demand for its removal, which was refused. Tucson Estates then filed a motion to quash, see *Kelly v. Perry*, 111 Ariz. 382, 531 P.2d 139 (1975), which was denied. This special action followed.

■ The denial of a motion to quash is not an appealable order. See A.R.S. § 12-2101. Notwithstanding the enactment of the lis pendens statute by the legislature, our supreme court has held that the trial court retains jurisdiction to determine a motion to quash a notice of lis pendens under equity principles. *Kelly v. Perry*,

*supra.* In so holding, however, we do not believe that the supreme court intended that the trial court should ignore the requirement of the statute that the action be one "affecting title to real property" and that the notice contain a description of the "property affected." A.R.S. § 12–1191(A). The determination of whether these requirements have been met, as well as the consideration of relative benefits and burdens under principles of equity, requires the exercise of the court's discretion. We may grant relief by way of special action when that discretion has been abused, see A.R.S. § 12–120.21(A)(3) and Rule 3, Rules of Procedure for Special Actions, 17A A.R.S., and we believe that relief is appropriate in a case such as the present one in which the issues presented are of statewide importance and the petitioner has no equally plain, speedy or adequate remedy by appeal.

## IS THIS AN ACTION "AFFECTING TITLE TO REAL PROPERTY"?

Tucson Estates argued before the trial court and this court that the notice should have been quashed because the action was not one "affecting title to real property." Although there are a number of Arizona cases dealing with various aspects of the doctrine of lis pendens, we have found none which defines the parameters of the statutory requirement that the underlying cause of action be one "affecting title to real property." Although the filing of a notice of lis pendens has been implicitly held to be proper in an action to foreclose a mortgage, *Ticktin v. Western Savings & Loan Ass'n,* 8 Ariz.App. 63, 442 P.2d 886 (1968), or for specific performance of a contract to sell real property, *Shreeve v. Greer,* 65 Ariz. 35, 173 P.2d 641 (1946), it has been held to be improperly filed in an action on a note, *Mammoth Cave Production Credit Ass'n v. Gross,* 141 Ariz. 389, 687 P.2d 397 (App.1984), or to impose a constructive trust on shares of stock, *Hook v. Hoffman,* 16 Ariz. 540, 147 P. 722 (1915), or to recover a real estate commission, *Richey v. Western Pacific Development Corp.,* 140 Ariz. 597, 684 P.2d 169 (App.1984). We have not been cited, nor have we found,

any Arizona cases which address the issue of whether actions involving interests in real property less than fee simple title may be the subject of a notice of lis pendens pursuant to A.R.S. § 12–1191.

Tucson Estates points to the historical note under this statute indicating that it was taken from § 409 of the California Code of Civil Procedure. As originally enacted, the California statute permitted the filing of a notice of lis pendens in an action "affecting real property," which was construed by the California Supreme Court to include only actions affecting title, as opposed to possession. *Long v. Neville,* 29 Cal. 131 (1865). Shortly thereafter, the statute was amended to include actions affecting "the title or the right of possession of" real property. Cal.Civ.Proc.Code § 409 (West 1973) (Historical Note). The California Court of Appeals has since held that an action to declare the existence of an easement is an action affecting possession and not title. *Kendall-Brief Co. v. Superior Court of Orange County,* 60 Cal.App.3d 462, 131 Cal.Rptr. 515 (1976). Tucson Estates argues that the action of the Arizona Legislature, in adopting the language "affecting title" in the face of *Long v. Neville, supra,* and the subsequent amendment of the California statute, was deliberate and indicates an intention that the statute not apply to any action other than one directly affecting the title to real property. We disagree.

At common law, under the doctrine of lis pendens, whoever acquires an interest in real property that is the subject of litigation stands in the same position as the person from whom he acquired the interest and takes that interest subject to the outcome of the litigation. *Mammoth Cave Production Credit Ass'n v. Gross, supra;* III American Law of Property § 13.12 (1952). Our supreme court had occasion to consider the effect of the predecessor to A.R.S. § 12–1191 on the common law doctrine in *Brandt v. Scribner,* 13 Ariz. 169, 174, 108 P. 491, 493 (1910), and noted that "[w]hile the subject under consideration is regulated by statute in this territory, the

condition of the law in this regard at the time of its enactment must be considered as tending to throw light upon the legislative intent." Concluding that the only purpose and effect of the statute was to require the filing of a notice of lis pendens in order for the doctrine to apply, the court quoted with approval the reasoning of the California Supreme Court in *Richardson v. White,* 18 Cal. 102, 106 (1861):

> The qualification of the doctrine made by the statute is such that a purchaser is not affected unless notice of such *lis pendens* be filed with the recorder. The common-law doctrine of *lis pendens* rests upon the fiction of notice to all persons of the pendency of suits, and to remedy the evils which might grow out of the transfer of apparent legal titles or rights of action to persons ignorant of litigation respecting them this provision was inserted in our statute. If no *lis pendens* be filed, the party acquiring an interest or claim *pendente lite* stands wholly unaffected by the suit. The object of the statute evidently was to add to the common-law rule a single term, to wit, to require for constructive notice, not only a suit, but filing a notice of it, so that this rule is as if it read: The commencement of a suit and the filing of notice of it are constructive notice to all the world of the action, and purchasers or assignees, afterward becoming such, are mere volunteers and bound by the judgment.

13 Ariz. at 175–176, 108 P. at 493. Thus, we believe that the legislature's only purpose in enacting the lis pendens statute was to require that a notice be recorded in order for the doctrine to apply. We see no intent to restrict or delineate the types of actions to which the doctrine applies.

■ In order to determine the scope of the doctrine and the statute, we look to their purpose, which is two-fold. The first is to provide notice to anyone "who is interested in a particular piece of real property and who may be affected by the outcome of litigation in which the property is the subject matter of suit." *Mammoth Cave Production Credit Ass'n v. Gross, supra,*

141 Ariz. at 391, 687 P.2d at 399; see also *Kelly v. Perry, supra.* The second is to prevent "third persons from acquiring, during pendency of the litigation, interests in the property which would prevent the court from granting suitable relief or such as would vitiate a judgment subsequently rendered in the litigation." *Mammoth Cave Production Credit Ass'n v. Gross, supra,* 141 Ariz. at 391–392, 687 P.2d at 399–400. This latter purpose, we believe, supports a construction of the phrase "affecting title to real property" which is broader than that argued by Tucson Estates.

■ Plaintiffs rely on the decision of the Colorado Supreme Court in *Hammersley v. District Court in and for County of Routt,* 199 Colo. 442, 610 P.2d 94 (1980), which held that an action to enforce building covenants was an action affecting title to real property within the meaning of Colorado's court rule permitting the filing of a notice of lis pendens. We agree with that court's analysis of this issue:

> The policy that successful completion of a suit involving rights in real property should not be thwarted by permitting transfers of interests in real property to persons not bound by the outcome of the suit continues in its full vigor. This policy would be furthered by giving an expansive interpretation to the language 'affecting the title to real property' as found in C.R.C.P. 105(f). The instant case involves the extent of limitations on the rights of an owner of a lot in a subdivision to construct a residence on that property. Those rights are incidents of the owner's title. Although the present litigation does not seek to change ownership in any way, it does involve a determination of certain rights incident to ownership and in that sense affects title to real property. It will promote the finality of litigation and economy of judicial resources, will harm no legitimate interest of the owner, and will be fully consistent with the language of C.R.C.P. 105(f) to hold that the instant case is one affecting title to real property within the

meaning of that rule. We adopt that construction.

199 Colo. at 445–46, 610 P.2d at 96–97. We also find that the purpose behind the doctrine of lis pendens is best served by construing the statute to permit the filing of a notice of lis pendens in any action involving an adjudication of rights incident to title to real property.

The issue then is whether any of the three counts of the amended complaint sets forth a cause of action which will involve an adjudication of rights incident to title to any or all of the real property described in the notice of lis pendens.

■ Count two seeks the declaration of an implied restrictive covenant that the golf course be maintained for the exclusive use of the residents of Tucson Estates I. Relief is sought against Tucson Estates individually and as representative of a class consisting of all lot owners in Tucson Estates II and those in Tucson Estates I who wish residents of Tucson Estates II to be able to use the golf course for a fee. If declared by the court, the covenant would confer on the lot owners in Tucson Estates I a right to use the golf course which arises out of their ownership of such lots and would thus be a right incident to their title. Similarly, such a covenant would impose upon Tucson Estates, as the owner of the golf course, a duty to maintain the land as such, a duty which is also incident to its title. Finally, if plaintiffs are successful, the judgment will in effect declare that the right to use the golf course is not a right incident to ownership of lots in Tucson Estates II. We see no reason in law or logic to hold other than that a lis pendens may be filed where the object of a suit is to determine what is not a right incident to title as well as what is such a right.

Because we conclude that the notice of lis pendens was properly filed with respect to count two, we need not address the issue as to the remaining counts.

## IS THE PROPERTY DESCRIPTION OVERLY BROAD?

The body of the notice of lis pendens provides as follows:

KINDLY TAKE NOTICE that a lawsuit has been commenced in the above entitled Court between the above named parties which may affect title to the real property described on Exhibit A hereto. The object of the suit is as follows:

1. With respect to that part of the property described on Exhibit A which is depicted upon plats recorded as shown on the following list, to obtain an adjudication concerning the amount of the monetary assessments which may be levied under the corresponding Deed Restrictions on the following list:

[List of lots in Tucson Estates I, together with recording information of corresponding plats and deed restrictions]

2. With respect to all property described on Exhibit A, to obtain an adjudication that there is an implied restrictive covenant that the golf course included within the property described on Exhibit A must be maintained as a golf course for the exclusive use of the residents of the subdivision listed in Paragraph 1, above, and that the defendant may not sell the right to use that golf course to persons who purchase property described on Exhibit A but not included in one of the subdivisions listed in Paragraph 1.

The relief demanded is a declaratory judgment to the effect described above and corresponding injunctive relief.

■ Paragraph 2[1] purports to subject all of the properties described in Exhibit A to the outcome of the litigation over the implied restrictive covenant. In contrast with the allegations in the amended complaint, however, which seek relief with respect to the golf course as against Tucson Estates, all lot owners in Tucson Estates II and some lot owners in Tucson Estates I, Exhibit A includes in its description not only the golf course and Tucson Estates II, but

1. Paragraph 1, which pertains to counts one and three, encompasses only lands in Tucson Estates I, which are also encompassed within paragraph 2. Since those lands are properly included under paragraph 2, we need not decide whether paragraph 1 is overbroad even assuming those counts set forth a cause of action affecting title to real property.

also all land in the area owned by Tucson Estates as well as parcels owned by third parties who are not involved in the present litigation. In this respect, the notice is clearly overly broad, and the trial court erred in refusing to quash the notice as to those properties not affected by the litigation. The rights sought to be established are rights incident to the ownership of lots in Tucson Estates I, the land to be benefited by the covenant. The burden of the covenant would run with the golf course property and is therefore incident to its ownership. As discussed above, title to lots in Tucson Estates II would also be affected by a declaration that the right to use the golf course is not a right incident to ownership of such lots. These properties are thus properly included in the notice of lis pendens. This litigation will not, however, adjudicate title or rights incident to title to any of the other properties described in the notice. We therefore grant relief to this extent.[2]

The order of the trial court is vacated and the cause is remanded for further proceedings consistent with this opinion.

HATHAWAY, C.J., and HOWARD, P.J., concur.

---

**2.** Tucson Estates is not a proper party to challenge the validity of the notice as to lots within Tucson Estates II which it has previously conveyed. We therefore decline to rule on this issue and express no opinion as to the effect of the notice on the rights of those purchasers.