[No. 14754-8-II. Division Two. March 25, 1992.]

ANTHONY SCHWAB, ET AL, *Appellants*, v. THE CITY OF SEATTLE, ET AL, *Defendants*, NEW WEST FEDERAL SAVINGS AND LOAN ASSOCIATION, *Respondent*.

*Anthony Schwab,* pro se.

*William R. Hickman, Marilee C. Erickson,* and *Reed McClure,* for respondent.

ALEXANDER, J. — This case concerns a dispute about who can use an easement affecting several parcels of residential

property in West Seattle. (For easier reference, we have appended a map of the area to this opinion. The streets and parcels involved are shaded.) Anthony Schwab, owner of the servient parcel,[1] appeals a partial summary judgment of the King County Superior Court that granted both an easement of right and an easement of necessity across his property, dismissed his trespass claims against the owners of the dominant parcels, and canceled a lis pendens that he had recorded on those parcels with the King County Division of Election and Records. Schwab also appeals a jury award of $9,000 in damages against him on a slander of title counterclaim by New West Savings and Loan,[2] as well as costs and attorney's fees assessed against him because of his recording of the lis pendens. We affirm on the easement and trespass claim and reverse the award of damages for a slander of title.

At a foreclosure sale in 1974, Schwab bought lot 2 of the Homecroft Addition, a piece of property bordering 24th Avenue S.W. The lot had a single-family residence on it. Donald and Doris Andrews owned the contiguous lot 5 of the Homecroft Addition, a much larger lot, unimproved and bordering on 26th Avenue S.W.

A dispute arose between Schwab and the Andrewses. Schwab contended that he could take a 70- by 75-foot portion of the Andrewses' lot by adverse possession, and in fact Schwab had put a driveway across the contested property. After 9 months of negotiations, Schwab and the Andrewses entered a joint agreement to quiet title in which Schwab obtained the parcel he wanted in exchange for granting the Andrewses an easement across his property to 24th Avenue S.W. for "any one single-family dwelling on Lot 5." The word

---

[1] In the law of real property, the servient estate is the one that is burdened by the easement; it is the parcel across which the easement runs. The dominant estate enjoys the benefit of the easement. *See* Black's Law Dictionary 436, 1228 (5th ed. 1979).

[2] Of the original defendants in this case, only New West Federal Savings and Loan (assignee of FSLIC and receiver for American Savings and Loan) and Darrell and Julia Wallis remain for this appeal.

"one" was inserted in longhand into the typed agreement and initialed by Schwab and the Andrewses' attorney.

The Andrewses then sold lot 5 to the Lamoreux Construction Company in 1979, and Lamoreux subdivided the lot into four parcels designated A, B, C, and D. Eventually, parcel D, contiguous to Schwab's property, was further divided into three parcels, lots 1, 2, and 3. These three lots are the subject of the present dispute. Lot 1 is owned by Darrell Wallis. Lots 2 and 3 are owned by New West Savings and Loan. While lots 2 and 3 directly abut Schwab's property, lot 1 does not. None of the lots borders a public street, but lot 1 has access up a steep hill to 26th Avenue S.W.

In 1980, lots A, B, and C and lot 1 of the further subdivision of D were each improved with a single-family house. Then in 1983, Lamoreux built houses on lots 2 and 3. After doing so, Lamoreux put in a concrete driveway from the bottom of lot 1, Wallis' property, across lots 2 and 3 to the corner of Schwab's property. This action effectively joined a 26th Avenue easement for parcels A, B, C, and lot 1 of D with the easement that Schwab had granted the Andrewses.

Schwab, who was out of town when Lamoreux poured the driveway, attempted to contact the company when he returned, and he eventually tried to block the route. Seattle police and fire departments prevented him from doing so. It is undisputed that the residents of lots 1, 2, and 3, usually renters, used the easement across Schwab's property.

Schwab eventually sued to enjoin trespass by residents of the other lots, including lots 2 and 3, and to quiet title in him to the property across which ran the easement to 24th Street S.W. At the same time, he filed a lis pendens on all the parcels carved from the original Andrews property, lot 5 of the Homecroft Addition.

New West answered and counterclaimed for slander of title. Because the lis pendens was in place, New West lost sales on lots 2 and 3. Having vacated those residences in preparation for the anticipated sales, New West also lost rental income on them of $525 and $540 per month until

the lis pendens was removed and the houses sold, a period of about 8 months.

In the next procedural step, New West sought a partial summary judgment dismissing Schwab's trespass claims and an award to it of an easement of necessity for lots 2 and 3. It also asked for damages for slander of title. Schwab filed a countermotion. After hearing arguments, the trial court entered an order on summary judgment (1) granting New West an easement of necessity for lot 2 and stating lot 3 had the benefit of the original easement from the Schwab-Andrews agreement; (2) dismissing Schwab's trespass and quiet title claim with prejudice; and (3) canceling the lis pendens. The trial court reserved for trial the issues of compensation for the lot 2 taking and issues of fact concerning New West's slander of title claim. Schwab's trespass claim against Wallis was also still pending at this point.[3]

At trial, the court heard testimony from various witnesses concerning the neighborhood, use of the easements, the intent of the parties when the original Schwab-Andrews easement agreement was formed, and New West's lost sales and income on lots 2 and 3. The trial court decided as a matter of law that the original easement agreement was ambiguous because of the interlineated word, "one". The trial court determined essentially that lot 1, which had been part of the original Andrews property, had an easement across Schwab's property as a result of the original Schwab-Andrews agreement. The trial court entered findings of fact and conclusions of law stating that the subdivision of the Andrews property did not extinguish the original easement so that Wallis continued to have an easement across Schwab's property, and Schwab's trespass claim against Wallis must therefore fail. Wallis was then dismissed from the case.

The trial court further determined that, as a matter of law, a dispute concerning the right to an easement across

---

[3]We infer from the voluminous record before us that Wallis, who acted pro se throughout these proceedings, had not moved for summary judgment as had codefendant New West.

real property does not affect title to the property benefiting from that easement (the dominant estate). This determination removed from the jury one of the elements of New West's slander of title counterclaim, namely that the statement concerning the property be false. The other slander of title elements went to the jury.

On the slander of title claim, the jury found in favor of New West and awarded it $9,000 in damages for the lost sales of lots 2 and 3 and lost rental income. The jury awarded Schwab nothing as compensation for the taking of the easement for lot 2.

Schwab's posttrial motions were all denied. The trial court had earlier imposed $150 terms on Schwab for his failure to have the lis pendens removed following the order on partial summary judgment. This amount was increased to $1,000 to include expenses that New West incurred when it had to go into court to get an order formally to remove the lis pendens.

This appeal followed, in which Schwab made over 40 assignments of error and raised more than 20 issues. His principal contentions, however, are that an easement dispute affects title to real property so that New West failed to prove its slander of title claim and that lots 1 and 2 should be prevented from using the easement to 24th Avenue S.W. We hold that a dispute concerning an easement does affect title to the real property that it benefits. We accordingly reverse the award of $9,000 damages to New West. Because we necessarily then determine that the lis pendens was proper, we also reverse the award of $1,000 terms and attorney's fees against Schwab. We affirm the judgments in all other respects.

## SLANDER OF TITLE

■ To prove its slander of title claim, New West had the burden of showing that the words concerning the property (1) must be false; (2) must be maliciously published; (3) must be spoken with reference to some pending sale of the property; (4) must result in pecuniary loss or injury to the

claimant; and (5) must be such as to defeat the plaintiff's title. *Pay 'N Save Corp. v. Eads*, 53 Wn. App. 443, 448, 767 P.2d 592 (1989) (citing *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375, 617 P.2d 704 (1980)). We concern ourselves with the first element only.

To prove that the lis pendens that Schwab filed on the property was "false", New West contended that an easement dispute does not affect title so that Schwab could not properly file a lis pendens based on this dispute. Schwab contends, on the contrary, that easement disputes do affect title so that he properly filed the lis pendens. We agree with Schwab.

RCW 4.28.320, our lis pendens statute, states in part:

> In an action *affecting the title to real property* the plaintiff, ... may file with the auditor of each county in which the property is situated a notice of the pendency of the action. . . .

(Italics ours.)

▮▮ No Washington cases have addressed the issue of whether an easement dispute affects title to real property under this statute. Interpreting a statute identical to Washington's, however, the Arizona Court of Appeals has stated that the purpose behind the doctrine of lis pendens is best served by construing the statute to permit the filing of a notice of lis pendens in any action involving an adjudication of rights incident to title to real property. *Tucson Estates, Inc. v. Superior Court*, 151 Ariz. 600, 605, 729 P.2d 954, 959 (Ct. App. 1986) (interpreting Ariz. Rev. Stat. Ann. § 12-1191 (1982)). The purpose of the statute is twofold: the first is to provide notice to anyone interested in a particular piece of real property and who may be affected by the outcome of litigation involving that property; the second is to prevent " 'third persons from acquiring, during pendency of the litigation, interests in the property which would prevent the court from granting suitable relief or such as would vitiate a judgment subsequently rendered in the litigation.' " *Tucson Estates*, at 604 (quoting *Mammoth Cave Prod. Credit Ass'n v. Gross*, 141 Ariz. 389, 391-92, 687 P.2d 397 (1984)).

In *Tucson Estates*, a group of mobile home owners sought declaration on an implied restrictive covenant that a particular golf course be maintained for the exclusive use of the mobile home community and the developer be enjoined from extending use to nonresidents. The homeowners eventually filed a lis pendens on various properties involved.[4]

The court concluded that, if the covenant were declared to exist by the trial court, it would confer on affected residents the right to use the golf course, a right that arose from ownership of their lots and was therefore incident to title. Similarly, the covenant would impose on Tucson Estates, as the owner of the golf course, a duty to maintain the land as such, a duty incident to title. *Tucson Estates*, at 605. The lis pendens therefore had properly been filed on these properties.

In the present case, the easement in question affects New West's access to its property or, in other words, its possession. Possession is certainly incident to title. Title, in the context of real property, is defined as "the means whereby the owner of lands has the just possession of his property." Black's Law Dictionary 1331 (5th ed. 1979).

New West relies on *Kendall-Brief Co. v. Superior Court*, 60 Cal. App. 3d 462, 131 Cal. Rptr. 515 (1976) for the proposition that actions concerning easements do not affect title to real property. The California statute interpreted there, however, is broader than Washington's and provides that a lis pendens may be filed " 'in an action concerning real property or affecting the title or the right of possession of real property.' " *Kendall-Brief*, at 465. Applying that statute, the *Kendall-Brief* court ultimately decided that, while an access easement in question there did not affect title to the dominant estate (new development seeking to use existing road), it certainly affected possession, so that the lis pendens had properly been filed.

---

[4]The court ultimately found that the lis pendens was overly broad and that the trial court had erred in failing to quash it as to the unaffected properties. *Tucson Estates*, at 606.

Interestingly, the *Tucson Estates* court traced the history of the California lis pendens statute, which had served as the model for Arizona's. *Tucson Estates*, at 603. The original statute had permitted a lis pendens in an action "affecting real property", which the California Supreme Court interpreted to mean only actions affecting title, not possession. *Tucson Estates*, at 603. The California Legislature then amended the statute to include actions affecting "the title or the right of possession of" real property. Tucson Estates therefore argued that the Arizona Legislature's adoption of the more limited "affecting title" language showed a deliberate intent that the statute apply to no action other than one directly affecting title. *Tucson Estates*, at 603. The Arizona Court of Appeals disagreed for the reasons noted above.

We are persuaded by the reasoning that the purpose of the lis pendens statute is best served by a broad interpretation of its language. Were we to adopt the narrower reading suggested by New West, potential buyers and encumbrancers would receive no notice of actions concerning easements. We cannot believe the Legislature intended such a result. *See* RCW 4.28.320 ("From time of filing [of lis pendens] only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby . . .").[5]

Because we determine that the lis pendens was not "false", but properly filed, New West's slander of title claim must fail. We reverse the damages award in favor of New West as well as the award of terms and attorney's fees against Schwab.

## EASEMENTS

We affirm the trial court's summary judgments concerning the easements. On the basis of affidavits and pleadings before it, the summary judgment court determined that lot 3 benefited from the original easement and lot 2 had an

---

[5]We are aware that Division Three of this court has determined that an action to enforce the terms of a restrictive covenant does not affect title to real property. *Foster v. Nehls*, 15 Wn. App. 749, 753, 551 P.2d 768 (1976), *review denied*, 88 Wn.2d 1001 (1977). The court provided no analysis for its conclusion, however. We decline to follow it.

easement of necessity under RCW 8.24.010. *See Roberts v. Smith*, 41 Wn. App. 861, 864, 707 P.2d 143 (1985) (enumerating factors establishing easement by implication).

 Further, the trial court properly removed from the jury the interpretation of the original Schwab-Andrews easement agreement. Determination of whether a written instrument is ambiguous is a matter of law to be determined by the court, and such a determination is subject to independent appellate review. *Victoria Tower Partnership v. Lorig*, 40 Wn. App. 785, 788, 700 P.2d 768 (1985). In construing the document that grants an easement, the duty of the court is to ascertain and give effect to the intention of the parties, which is determined by a proper construction of the language of the instrument. *Green v. Lupo*, 32 Wn. App. 318, 321, 647 P.2d 51 (1982). An easement is construed in accordance with the parties' intentions as determined from the language of the entire grant; and if an ambiguity exists, the court should consider the situations and circumstances of the parties at the time of the grant. *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981). Parol evidence may be used to explain an ambiguity in an instrument creating an easement. *Green v. Lupo*, 32 Wn. App. at 321.

The trial court appropriately heard testimony concerning the intent of the parties to the agreement and determined that "any one single-family house" was ambiguous. The trial court concluded, as Andrews urged, that the language granted an easement for any house built on the Andrews property in the future and that, as such, the easement extended to Wallis' property, lot 1. Because he had the easement all along, Wallis could not be liable to Schwab for trespass, the trial court concluded, and dismissed that claim. We agree with that decision.

We have considered other issues raised by Schwab and find that they are either disposed of by our resolution of these principal issues or are without merit. No attorney's fees are awarded for this appeal.

Reversed in part; affirmed in part.

SWANSON, J. Pro Tem., concurs.

APPENDIX

PETRICH, C.J. (dissenting) — While I concur with the majority's affirmance on the right to the easement and trespass claims, I disagree with its reversal of the award of damages to New West Federal Savings and Loan Association on its counterclaim for slander of title and, therefore, dissent.

In my view the majority has confused the right of access to property with the right of possession, the latter being commonly considered as an incident of title or ownership of property.

As the majority has observed, Schwab sued "to enjoin trespass by residents of the other lots, including lots 2 and 3, and to quiet title in him to the property across which ran

the easement to 24th Street S.W." Majority, at 745. Since the disputed easements impacted the servient estate, his own property, one would expect that he would file the lis pendens on that strip. But Schwab did not do that. He filed the lis pendens on lot 5 less the property he acquired from the Andrewses, while not claiming any interest to that property whatsoever.

A more appropriate definition of title can be found in the Restatement:

> In common and legal speech the word "title" normally signifies (1) ownership or, when used with appropriate limiting words, a claim of ownership, or (2) the totality of the evidence, that is, the operative facts which result in such ownership or on which the claim of ownership is based.

Restatement of Property § 10, at 28 (1936).

The case of *Tucson Estates, Inc. v. Superior Court*, 151 Ariz. 600, 729 P.2d 954 (Ct. App. 1986) gives no support to the majority's position. As the majority points out the disputed covenant in *Tucson Estates* if approved would confer on certain residents the right to the exclusive use of the golf course, a right incident to the ownership of their respective lots with a corresponding burden on the golf course. This resulted in a positive incident of title on the individual lots and a negative incident of title on the golf course. No wonder that the court approved the lis pendens on those certain lots and the golf course. Consistent with its analysis the Arizona court disapproved the lis pendens on other property not affected by the covenant. *Tucson* did not involve a right of access to either the golf course or the respective lots and does not justify the majority's conclusion that right of access equates to a right of possession.

While New West's ability to market its property may have been affected by the status of the easement, its title was not at all impacted by the ultimate resolution of that status. Its title was in no way enhanced nor diminished by the presence or absence of the easement. New West held all the incidents of ownership and title, including among others

the *right to possession* of its property, to the exclusion of others.

Even if possession alone of lot 5, as opposed to the right to access over the disputed easement, was involved, I would point out that the Washington Supreme Court has concluded that a contract vendee's right of possession does not rise to the dignity of title, either legal or equitable. *Lawson v. Helmich*, 20 Wn.2d 167, 173, 146 P.2d 537, 151 A.L.R. 930 (1944).

Assuming without conceding that the denial of the easement right across the servient estate limited New West's ability to use its property and thus somehow infringed upon its right to possession, I am satisfied that our statute does not authorize the filing of a lis pendens on New West's property. In *Kendall-Brief Co. v. Superior Court*, 60 Cal. App. 3d 462, 131 Cal. Rptr. 515 (1976), the court was concerned with a claim to a similar easement — use of a private road over the servient estate. A lis pendens was filed on both the servient and dominant estates. At issue was the appropriateness of the lis pendens on the dominant estate only. Unlike the Washington statute, the California statute authorized the use of lis pendens not only in actions affecting title but also in actions affecting the right of possession of the real property. The California court was careful to preserve the distinction between the two applications of lis pendens. It held that although loss of an easement would affect the market value of real property, it would not affect title, but approved the lis pendens on the other statutory ground, because loss of an easement would affect the "right of possession" of the dominant estate. The court stated that although "title to the dominant tenement is unaffected when an easement is [landlocked and therefore] virtually unusable", the right of possession is affected because "it includes the right to have access to and to occupy such property." 60 Cal. App. 3d at 468. *See also Hocking v. Title Ins. & Trust Co.*, 37 Cal. 2d 644, 234 P.2d 625 (1951) (dominant estate's loss of easement does not affect title). Since our statute limits use of a lis pendens to

actions affecting title only, the use of the lis pendens here under that analysis was not authorized.

The majority's concern that potential buyers and encumbrancers would receive no notice of actions concerning easements is readily allayed. If the lis pendens is filed on the servient estate over which the easement runs, potential buyers and encumbrancers would be placed on notice that easement rights are disputed. This may or may not be of concern depending upon the availability of other potential avenues of access. In any event, title to the dominant estate is not affected.

Some easements are minor in nature and do not involve the only means of access to the dominant estate. Does it seem fair that someone objecting to a minor easement should be able to cloud title to the dominant estate merely by interjecting a lis pendens? I think not. Such a result would be intolerable and has the potential as a means of legal blackmail.

I would affirm the trial court's judgment in all respects.