

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALPINE VILLAGE, INC, a Washington
corporation,

    Appellant,

    v.

CITY OF OAK HARBOR, a municipal
corporation, LOIS A. LEWIS, trustee for
Fund 'A' of the William E. Lewis and Lois
A. Lewis Living Trust; JOHN C. ROYCE,
JR.; MICHELE B. BISHAI; ALICE S.
SMITH; DAVID A. JASMAN; SUE M.
KARAHALOIS; ROBERT T. SEVERNS;
RHODA LEE HAINES-PITT, aka RHODA
KIRCHOFF; WELLS FARGO BANK, N.A.;
PHYLLIS E. ROLLAG; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; and PIER POINT
CONDOMINIUMS ASSOCIATION,

    Respondents.

No. 74869-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 22, 2017

APPELWICK, J. — The question presented is whether a declaration of easement was intended to benefit all the lots in a proposed binding site plan, or only those actually developed pursuant to that plan. The trial court granted summary judgment, finding no benefit to lots not developed pursuant to the binding site plan. We affirm.

## FACTS

Donna Mott owned eight contiguous lots in Oak Harbor. In November 1991, she executed a binding site plan (BSP) for an eight-building condominium development on that land.

On May 18, 1992, Mott executed a declaration of Pier Point condominiums containing covenants, conditions, restrictions, and reservations (CC&Rs). Both the CC&Rs' plan of development and the BSP created a construction schedule with a maximum of eight phases, or one phase for each lot.[1] As amended, the BSP showed the following plan:



(Numbering added to reflect the building phases.)

---

[1] The schedule stated in relevant part:

Phase 1-8 as designated herein are scheduled for completion in accordance with the following;

Phase 1 completed by April 15, 1992
Phase 2-4 completed by October 15, 1992
Phase 5 completed by January 15, 1993
Phase 6 completed by January 15, 1994
Phase 7 completed by January 15, 1995
Phase 8 completed by January 15, 1996

On May 20, 1992, Mott recorded a declaration of easement for the project. The relevant portion of the easement reads as follows:

> WHEREAS, DONNA L. MOTT, as her separate estate, hereafter referred to as "DECLARANT", is the owner of that parcel of real property described as follows:
>
> > Situate[d] in the County of Island, State of Washington:
> >
> > Lots 1, 2, 3, 4, 18, 19, 20, 21, Block 7, OAK GROVE ADDITION, according to the plat thereof recorded in Volume 2, of Plats, page 29, records of Island County, Washington;
> >
> > TOGETHER WITH that portion of vacated east Pioneer Way, as would attach by due process of law, said portion having been vacated by Ordinance 355, recorded July 23, 1974, under Auditor's File No. 275106, records of Island County, Washington.
> >
> > Said Property is also described as follows:
> >
> > Lot 1 through Lot 8, inclusive, of City of Oak Harbor Binding Site Plan No. SPR-9-91, as approved November 19, 1991, and recorded December 3, 1991, under Auditor's File No, 91018478, records of Island County, Washington, and as amended by Amendment thereof, approved January 6, 1992, and recorded January 9, 1992, under Auditor's File No. 92000451.
>
> WHEREAS, DECLARANT desires to establish the necessary easements for ingress, egress, and utilities to serve and benefit the Pier Point Condominiums affecting Lot 1 or building 1, as delineated in said Building Site Plan and to serve and benefit each successive phase of condominium development affecting Lot or Building 2 through 8 as shown in said Building Site Plan.
>
> NOW, THEREFORE, for and in consideration of mutual benefits of a nonmonetary nature, the receipt and sufficiency of what are hereby acknowledged, the DECLARANT does hereby declare for

the benefit of the owners, present and future, of the above-described property, and any legally subdivided portions thereof, an easement for the following:

> (1) ingress, egress, and the installation, maintenance, and/or repair of utilities over, under, and across that portion of Lot 1 and Lot 6 of the Building Site Plan, which is delineated on the Condominium Plan of Pier Point Condominiums, Division No. 1, recorded as Auditor's No. 92009143, records of Island County, Washington, and labeled as "Access and Utility Easement."
>
> (2) the installation, maintenance and/or repair of utilities, including, but not limited to, power utilities, sanitary sewer . . . and for the ingress and egress reasonably necessary for such purposes, over, under and across those portions of DECLARANT'S above-described property as built or as marked and delineated in the referenced Building Site Plan as utilities;
>
> (3) landscaping purposes over the portion of Declarant's property delineated in said Binding Site Plan, including, the ingress and egress reasonably necessary for such purposes; and
>
> (4) the ingress and egress reasonably necessary to serve each phase or building of Pier Point Condominiums as constructed in accordance with the referenced Building Site Plan, and for such sidewalks as may be required by the City of Oak Harbor, Washington, with respect to the subsequent phases of Pier Point Condominium.

The amended BSP had required the final phases of Pier Point construction to be complete by January 15, 1996. And, the CC&Rs stated that "[n]o additional phases may be added more than seven (7) years after the recording of this declaration."

Both parties concede that the seven year window elapsed, after only four (one through four) of the eight phases were complete. The following is a rendering of the completed phases and remaining undeveloped property:



(Numbering added to reflect the building phases.)

This created a unique factual backdrop for a lengthy series of legal disputes over the use of the remaining property.

In 2001, well after the development schedule had expired, Mott sold the undeveloped remainder of the property to Alpine. In 2009 the trial court ruled in favor of Alpine and against the Pier Point Condominiums Association and the individual owners, regarding whether a portion of the property was common area.[2] Then, in a second lawsuit, the trial court recognized that the easements continue to burden the undeveloped property. This decision did not address

---

[2] In this case the respondents are the City of Oak Harbor, the Pier Point Condominiums Association, and the individual owners (collectively "Pier Point").

whether Alpine's lots also received the easement benefit. And, it was not appealed.

Alpine then submitted a preliminary site plan to the City of Oak Harbor (City). The City required that Alpine show that it has rights to use the ingress, egress, sewer, and utility easements in question, or present development plans that did not rely on the easements at issue. The City stated that a declaratory judgment regarding the availability of the easements would suffice.

On June 20, 2014, Alpine filed a complaint for a declaratory judgment regarding the availability of the easements. The parties brought cross motions for summary judgment and stipulated that there were no questions of material fact. The trial court ruled in favor of Pier Point.

The trial court's decision rested on two independent grounds. First, it held that the easement benefit never became effective with respect to Alpine's property because the deed from Mott to Alpine did not reference the declaration of easement. Second, it held that the plain language of the declaration of easement limited its applicability to only the Pier Point development. Alpine appeals.

## DISCUSSION

Alpine makes two arguments on appeal. First, it argues that the trial court erred in determining that the easements originally created for the Pier Point development were not available for Alpine Village's use in its new development.

Second, Alpine alternatively argues that the easement should be modified pursuant to the changed conditions doctrine.

An appellate court reviews summary judgment in a declaratory judgment action de novo and performs the same inquiry as the trial court. McNabb v. Dep't of Corr., 163 Wn.2d 393, 397, 180 P.3d 1257 (2008). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, while all questions of law are reviewed de novo. Coppernoll v. Reed, 155 Wn.2d 290, 296, 119 P.3d 318 (2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Stalter v. State, 151 Wn.2d 148, 154, 86 P.3d 1159 (2004).

Despite the unique facts, the legal question here is simply whether the declaration of easement was intended to benefit the property now owned by Alpine. Alpine assigns error to two premises of the trial court's decision on the applicability of the easement. First, Alpine disputes the trial court's conclusion that the grantor's intent was to limit the easement's availability to only the original Pier Point BSP. Second, Alpine disputes the trial court's conclusion that the easements never took effect with respect to the four lots that Alpine seeks to develop. Alpine must prevail on both of these arguments, because the easements are unavailable to Alpine if either the easement benefit was specifically limited to the Pier Point BSP, or the benefit never took effect on Alpine's four lots.

7

An easement is an interest in land. Bakke v. Columbia Valley Lumber Co., 49 Wn.2d 165, 170, 298 P.2d 849 (1956). In construing the document that grants an easement, the duty of the court is to ascertain and give effect to the intention of the parties, which is determined by a proper construction of the language of the instrument. Schwab v. City of Seattle, 64 Wn. App. 742, 751, 826 P.2d 1089 (1992). We interpret easements in the same manner that we interpret contracts. See Butler v. Craft Eng Const. Co., 67 Wn. App. 684, 698, 843 P.2d 1071 (1992). Words in a contract are given their ordinary, usual, and popular meanings unless the entirety of the contract demonstrates a contrary intent. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005). This court applies the "context rule" in determining the meaning of contract language. See Berg v. Hudesman, 115 Wn.2d 657, 667-68, 801 P.2d 222 (1990). Under this rule, courts may consider the context surrounding a contract's execution. Hearst, 154 Wn.2d at 502.

The easement references both the description of the property as found in the county land records, and the description of the property as set out in the Pier Point BSP. Alpine argues that including both the Pier Point description and the county records description shows that the easement was intended to benefit development on that land, even if it was not developed pursuant to the Pier Point BSP. But, reference to the county land records was necessary because that was the only legal reference to the land at the time the easement was executed. And, it was necessary to also include the Pier Point BSP description, because that

reflected the potential change in the legal description of the property if and when it was developed under the BSP. Inclusion of the county land description does not demonstrate an intent to benefit separate from the BSP.

Alpine also points to broad language in the easement[3] as evidence that the easement is not limited to Pier Point owners:

> NOW, THEREFORE, for and in consideration of mutual benefits of a nonmonetary nature, the receipt and sufficiency of what are hereby acknowledged, the DECLARANT does hereby declare for the benefit of the owners, present and future, of the above-described property and any legally subdivided portions thereof, an easement . . . .

Alpine contends that, because it is an "owner" of the "above described property," it is entitled to the benefit.

But, the previous paragraph of the declaration of easement plainly stated that it was intended to benefit the development set out in the Pier Point BSP:

> WHEREAS, DECLARANT desires to establish the necessary easements for ingress, egress, and utilities <u>to serve and benefit the Pier Point condominiums</u> affecting Lot 1 of Building 1, <u>as delineated in said Building Site Plan</u> and <u>to serve and benefit each successive phase</u> of condominium development affecting Lot or Building 2 through 8 <u>as shown in said Building Site Plan</u>.

(Emphasis added.) This language explicitly limits the easement's availability the Pier Point BSP. And, because Alpine's development will not be part of the original Pier Point development, it is beyond the scope of this express intent language.

---

[3] Neither party contends that there is any other legally subdivided portion of the land besides the Pier Point BSP.

The final paragraph of the declaration of easement also reinforces this stated intent: The easement is "to serve the owners of <u>the specified condominium buildings</u>, their heirs, successors[,] and/or assigns, and, as such, shall be considered as running with the land." (Emphasis added.)

Alpine contends that no rational developer would so limit the development potential of her land. But, Alpine did not argue below that this context should be considered when interpreting the easement language. Even if we needed context to resolve this issue, the challenges of ingress/egress and utility easements for the entire parcel had been studied and were resolved in the binding site plan prior to the execution of the declaration of easement. The development plans clearly stated that no further development was permitted after the expiration date. Thus, the risk was clearly evident that one or more of the proposed eight condominium lots might not be developed as condominiums, and would fall outside of the binding site plan at the expiration of the deadline. Despite these facts, the declaration of easement made no explicit provision for the easements to apply to lots excluded from the BSP at its expiration. This is clear context, from the documents upon which Alpine asked the trial court to rely for summary judgment, that Mott did not intend the easement to extend to property other than that developed as condominiums under the BSP.[4]

---

[4] Mott's treatment of the deeds is consistent with that interpretation. She explicitly referenced the easement right in the condominium deeds. But, as Alpine concedes, she did not reference the easement in the Alpine deed.

We hold that, as a matter of law, the declaration of easement benefited only property developed pursuant to the Pier Point BSP. Therefore, the trial court did not err in granting summary judgement in favor of Pier Point.[5]

Alternatively, Alpine argues for the first time on appeal that the easements should be modified under the changed conditions doctrine. Court modification of an easement is an equitable proceeding and necessarily a fact-intensive inquiry. Any such modification request should be heard first by a trial court. We decline to address modification in this appeal.

We affirm.

_Appelwick, J._

WE CONCUR:

_Trickey, A.C.J._           _Leach, J._

---

[5] We need not address whether the easement benefit ever took effect with respect to Alpine's property.